# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RONALD COLLINS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>E.K. McDANIEL, et. al.,<br><br>　　　　Defendants. | 3:13-cv-00255-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is "Plaintiff's Motion for a Prohibitory Injunction to be Issued." (Doc. # 42.)[1] Defendants have filed a response (Doc. # 49) to which Plaintiff replied. (Doc. # 53.)

After a thorough review, the court recommends Plaintiff's motion be denied.

## I. BACKGROUND

**A. Summary of Claims**

At all times relevant to the allegations in this action, Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl., Doc. # 14.) The events giving rise to this litigation took place while Plaintiff was housed at Lovelock Correctional Center (LCC), and Plaintiff is currently housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Plaintiff, a pro se litigant, brings this action against Defendants LCC Warden LeGrand, and Correctional Officers Bail, Park, Ball and Baros, pursuant to

///

///

---

[1] Refers to the court's docket number. Unless otherwise noted all page-number references to briefing are to the court's docketed page numbers.

42 U.S.C. § 1983. (*See* Screening Order, Doc. # 11.)[2]

The court's January 6, 2014, screening order concluded that Plaintiff's amended complaint stated colorable claims for retaliatory destruction or loss of property under the First Amendment, and deliberate indifference under the Eighth Amendment relating to conditions of confinement. (Doc. #11 at 4-6.) The court dismissed all claims alleging violations of due process under the Fourteenth Amendment, all claims for injunctive relief, and all claims against Defendants in their official capacity. (*Id.*) In addition, the court dismissed Defendants NDOC, McDaniel, and Emanuel. (*Id.* at 8.)

The arguments made in Plaintiff's amended complaint which are relevant to this motion are as follows: Count II alleges that Defendant Baros disposed of over three-hundred dollars worth of Plaintiff's compact discs (CDs) at the direction of Defendant LeGrand. (Doc. # 11 at 4.) Count IV further alleges that Baros conducted a second inventory of property in Plaintiff's cell in 2013, without Plaintiff being present, and over his objection. *(Id.* at 6.) Plaintiff contends that Baros disposed of and damaged several items of his legal and personal property, allegedly in retaliation for Plaintiff's filing grievances regarding the incident alleged in Count II. (*Id.*) Plaintiff contends that the events alleged in Count II and IV were taken pursuant to a policy implemented by Defendant LeGrand to search inmate property in order to steal legal materials "brought against him and his officers." (*Id.*)

**B. Plaintiff's Motion (Doc. # 42)**

Plaintiff argues that, on an occasion separate from those alleged in his complaint, 12 "Double Disk CDs" were confiscated from his cell by Defendant Baros. Although the CDs have since been returned, Plaintiff contends that his name was scratched into two of the disks, rending them unreadable. Plaintiff argues that the CDs were confiscated and damaged in retaliation for Plaintiff's filing of grievances against Baros with respect to the conduct alleged in Plaintiff's amended complaint. (Doc. # 42 at 3.) Plaintiff states that he intends to use the CDs currently in his possession as exhibits in this case with respect to his First Amendment retaliation claim.

---

[2] Defendant McDaniel, whose name appears in the caption, was dismissed as a party to this action. (*See* Screening Order, Doc. # 11 at 8.)

Plaintiff's motion appears to be based on his contention that there is no uniform interpretation among NDOC personnel of Administrative Regulation ("A.R.") 711.1 (5)(A)(4).[3] Plaintiff contends that when he originally purchased the 12 "double disk CDs," he was told by the NDOC music vendor that each "double disk set" constituted only one CD under A.R. 711.1(5)(A)(4). As a result of this interpretation, Plaintiff seemingly contends he may have possibly as many as 24 CDs in his possession.

Plaintiff contends that when Defendant Baros subsequently confiscated the 12 "Double Disk CDs," he concluded that each double disk constituted two CDs rather than one, and consequently that Plaintiff had exceeded the maximum allowable number of CDs in his unit under A.R. 711.1(5)(A)(4). Plaintiff contends Defendant Baros used this interpretation of the A.R. as a pretext for confiscating and damaging these CDs, in retaliation for Plaintiff's filing of grievances.

Plaintiff contends that, absent the requested injunction, he will suffer irreparable harm in the future, as NDOC personnel are likely to use the vague language of A.R. 711.1(5)(A)(4) as a pretext to continue confiscating his CDs, now apparently in retaliation for Plaintiff's intent to use them as evidence. Plaintiff argues that such an occurrence would constitute irreparable harm, as he would no longer have access to the CDs which he intends to use as evidence in this case.

Consequently, Plaintiff asks the court to enter an order prohibiting Defendants and potential unknown NDOC personnel from any future confiscation of these music CDs now in his cell while this litigation is ongoing.[4]

**C. Defendants' Response (Doc. # 49)**

In their response, Defendants argue that Plaintiff's motion should be denied because Plaintiff has failed to demonstrate how his musical CDs are relevant to any of his remaining claims. In addition, Defendants contend that Plaintiff has failed to demonstrate how application

---

[3] The NDOC Property Manual provides, in pertinent part, that an inmate may possess "pre-recorded compact discs," but the "[t]otal [may] not exceed 12 combined CD[s] or cassettes." *See* Authorized Inmate Personal Property, A.R. 711.1(5)(A)(4)(a)(1), p. 8 of 16. The Manual does not specifically address whether a "Double Disc CD" constitutes one or two CDs, although a reasonable interpretation of "12 combined CDs or cassettes" would be 12 total, irrespective of how many discs are contained in any one set.

[4] As discussed infra at section I. (E), Plaintiff currently has possession of all his CDs.

- 3 -

1  of the preliminary injunction standard in any way favors granting his motion. Specifically,
2  Defendants argue that Plaintiff has failed to demonstrate a likelihood of success on the merits,
3  has failed established a likelihood of irreparable harm absent a preliminary injunction, and has
4  provided no indication why the granting of his motion would further the public interest.

**D. Plaintiff's Reply (Doc. # 53)**

Plaintiff contends that a preliminary injunction is necessary to protect the CDs currently in his possession. Plaintiff goes on to repeat his argument as to why he is entitled to injunctive relief, as detailed in his motion.

**E. Hearing on Plaintiff's Motion (Doc. # 68)**

The court conducted a hearing on Plaintiff's motion on July 21, 2014. During the hearing, Plaintiff explained that the CDs at issue have been returned to him, and he has personal possession of them. Plaintiff further clarified that the relief he seeks is an order prohibiting Defendants and unknown NDOC personnel from potentially confiscating the CDs now in his possession in the future. Plaintiff also indicated that his intention for seeking this relief was to ensure that he has access to the CDs when he wants to use them as evidence to support his retaliatory claim in this case.

Also during the hearing, Defendants' counsel asserted that Plaintiff's request for injunctive relief was inappropriate in light of the CDs being returned to him, and the fact that he currently has personal possession of the CDs.  Defendants further indicated that allowing Plaintiff essentially unrestricted possession of the CDs may present a security concern in the future.

## II. LEGAL STANDARD

The purpose of a prohibitory preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 554 U.S. 674, 989-90 (2008)(citations omitted). Instead, in every case the court "must balance the competing claims of

- 4 -

1  injury and must consider the effect on each party of the granting or withholding of the requested
2  relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal
3  quotation marks and citations omitted). The instant motion requires that the court determine
4  whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is
5  likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities
6  tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

7  Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for
8  issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on
9  one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127,
10  1131 (9th Cir. 2011). In *Winter,* the Supreme Court did not directly address the continued
11  validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter* 555
12  U.S. at 51 (Ginsburg, J., "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,'
13  sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is
14  very high. This Court has never rejected that formulation, and I do not believe it does so today.")
15  *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed
16  injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the
17  plaintiff, was expressly overruled by *Winters. See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127
18  (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter,* this circuit's sliding-scale
19  approach, or "serious questions" test "survives… when applied as part of the four-element
20  *Winters* test." *Alliance,* 632 F.3d at 1131-32. "in other words, 'serious questions going to the
21  merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an
22  injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

### III. DISCUSSION

Plaintiff has failed to establish the four requirements for issuance of a preliminary injunction as discussed in *Winter*. The Court will now address each of the four elements in turn.

**A. Likelihood of Success on the Merits**

Plaintiff has failed to address how the subject matter of his motion has any bearing on his likelihood of success on the merits of his underlying claims. A plaintiff seeking injunctive relief

must show "[a] relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."[5] Here, Plaintiff is for the most part requesting injunctive relief with respect to matters unrelated to his underlying claims. This action involves claims brought under the Eighth and First Amendments, concerning alleged destruction and damage to certain items of personal property, in retaliation for Plaintiff's filing of grievances. (*See* Doc. # 11 at 4 and 6.) Plaintiff's request for injunctive relief is based on more recent confiscations of different personal property (the 12 CDs), and asserts that future seizures of that property will occur in retaliation for Plaintiff's intent to use the CDs as evidence in this case.

Plaintiff perceives these new allegations in his motion as being part and parcel with his First Amendment retaliation claim. However, the allegations asserted in his motion appear to be new claims of retaliation, with respect to different items of personal property, arising from events separate and distinct from those underlying the claims proceeding in this action. (*Id.*)

Consequently, the court does not see how the conduct Plaintiff seeks to enjoin has any bearing on Plaintiff's likelihood of success on the merits of his First Amendment retaliation claim. Plaintiff's remedy for these new claims is to utilize the prison grievance system and, if they remain unresolved, to file a new action based on the allegations of retaliation put forth in his motion.

**B.  Likelihood of Irreparable Harm in the Absence of Injunctive Relief**

To satisfy the second element, Plaintiff must establish that the irreparable harm he alleges is *likely,* not just possible.[6] On this matter, Plaintiff has failed to demonstrate that the future confiscation of his CDs is anything more than a remote possibility. As Plaintiff advised the court at oral arguments, he currently possesses all 12 double-disk CDs, and thus there presently is no irreparable harm which would result if an injunction were not entered. In addition, Plaintiff has presented no evidence to substantiate his assertion that NDOC personnel are likely to retaliate

---

[5] *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997).

[6] *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *See also Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires a plaintiff seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction, before a decision on the merits can be rendered.")

against him in the future by confiscating these CDs.  To the contrary, Defendants indicate in their response that Plaintiff's CDs will <u>not</u> again be confiscated, absent legitimate NDOC safety concern, so long as his property complies with A.R. 711. (Doc. # 49, Exh. A at 2:6-16.)

Under these circumstances, the court cannot conclude that the future confiscation or destruction of Plaintiff's CDs is likely to occur, and a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974).

Moreover, even if Plaintiff's CDs were to be confiscated or damaged in the future, as he contends, the court fails to see how seizure of an inmate's personal music CDs, pursuant to a facially legitimate Administrative Regulation, necessarily constitutes  irreparable harm. Under such circumstances, the court will not interject itself into the legitimate daily operations of NDOC facilities.

**C.  Whether the Balance of Equities Tips in Plaintiff's Favor**

The third element of the *Winter* test likewise cautions against granting Plaintiff's motion. While granting the requested injunction could create significant safety concerns for Defendants, withholding the requested injunctive relief would, by comparison, impose only a minor inconvenience on Plaintiff. Specifically, if the harm which Plaintiff asserts were actually to occur, the sole consequence of its manifestation would be Plaintiff's inability to keep all of the 24 CDs in his cell. Because these CDs are not necessarily relevant to Plaintiff's claims, as discussed supra, the court does not see how their confiscation would amount to anything more than a minor inconvenience, if in fact Plaintiff's CDs were to be seized.

Defendants, on the other hand, have provided a declaration from the associate warden of NNCC underscoring the potential safety hazards which could result from granting the requested injunction:

> [I]t would be dangerous to NDOC staff, other inmates, and Mr. Collins himself if Mr. Collins was permitted to have the CD's (sic) in an altered state, i.e., broken or chipped because of the possibility that the CD's could be converted into a sharp object that could then be used as a weapon.

- 7 -

1    Doc. # 49, Exh. A at 2:13-16. Indeed, it is not difficult to appreciate Defendants' concern
2    with the prospect of allowing Plaintiff to keep the CDs in his cell, while enjoining all NDOC
3    correctional officers from confiscating them under any circumstance.

**D.  Public Interest in Issuing the Requested Injunction**

Finally, with respect to the fourth element, Plaintiff has provided no explanation why granting his motion would be in the public interest. To the court, there appears to be no public interest regarding Plaintiff's ability to retain these CDs in his cell.   It thus appears that all four factors weigh against issuing the requested injunction.

As a final note, Plaintiff's request for an injunction is not directed at any particular person, let alone a specific Defendant. While Plaintiff's motion seeks to enjoin "Nevada Department of [Corrections] (Defendant)," the allegations in Plaintiff's motion pertain only to Defendant Baros. (Doc. # 42 at 1.) Additionally, NDOC is no longer a Defendant in this action, and the court thus has no authority to enjoin the activities of NDOC. (Doc. # 11 at 7.)  During the motion hearing, Plaintiff also indicated that he would soon be transferred to a different NDOC institution, and expressed his desire to enjoin potential unknown officers at his new location. Again, the court has no authority to enjoin persons or entities not a party to this suit. Further, Plaintiff has no standing to seek injunctive relief regarding practices at a facility in which he does not reside.  *See, e.g., Johnson v. Moore*, 948 F.2d 517 (9th Cir. 1991).

For the forgoing reasons, Plaintiff is not entitled to injunctive relief. Accordingly, Plaintiff's motion (Doc. # 41) should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's motion requesting injunctive relief (Doc. # 42).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: July 29, 2014.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE