1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                             **DISTRICT OF NEVADA**

8

9   RONALD COLLINS,                    )          3:13-cv-00255-RCJ-WGC
                                       )
10                 Plaintiff,          )          **ORDER**
                                       )
11          vs.                        )          re: Doc. # 95
                                       )
12   NDOC, et al.,                     )
                                       )
13                 Defendants.         )
    _____)

14

15                            **I.  BACKGROUND**

16          At all times relevant to the allegations in this action, Plaintiff was an inmate in the custody of

17   the Nevada Department of Corrections (NDOC). (Amended Complaint, Doc. # 14.)[1] The events giving

18   rise to this litigation took place while Plaintiff was housed at Lovelock Correctional Center (LCC), and

19   Plaintiff is currently housed at Northern Nevada Correctional Center (NNCC). (*Id*.) Plaintiff, a pro se

20   litigant, brings this action against Defendants LCC Warden LeGrand, and Correctional Officers Bail,

21   Park, Ball and Baros, pursuant to 42 U.S.C. § 1983. (See Screening Order, Doc. # 11.)[2]

22          District Judge Robert Jones' January 6, 2014, screening order concluded that Plaintiff's amended

23   complaint stated colorable claims for retaliatory destruction or loss of property under the First

24   Amendment, and deliberate indifference under the Eighth Amendment relating to conditions of

25   confinement. (Doc. # 11 at 4-6.) The court dismissed all claims alleging violations of due process under

26   the Fourteenth Amendment, all claims for injunctive relief, and all claims against Defendants in their

27   _____

28          [1] Refers to court's docket number.

            [2] Defendant McDaniel, whose name appears in the caption, was dismissed as a party to this action. (See Screening
    Order, Doc. # 11 at 8.)

1   official capacity. (*Id.*) In addition, the court dismissed Defendants NDOC, McDaniel, and Emanuel. (*Id.*

2   at 8.)

## II. MOTION TO COMPEL

4          This court conducted a hearing on Plaintiff's motion to compel (Doc. # 64) on September 5,

5   2014. (See, Minutes, Doc. # 96.)[3]   The motion was granted in part and denied in part (*id.*) The

6   Defendants were directed to provide certain supplemental documentation. On September 15, 2014,

7   Defendants submitted a Notice to the Court Regarding Defendants' Supplemental Responses to Plaintiff's

8   Request for Production of Documents." (Doc. # 95.) This order discusses issues concerning the adequacy

9   of Defendants' supplemental responses to Requests for Production (RFP) 5, 14 and 15. (Doc. # 95 at 2.)

## III.  DISCUSSION

11          The Notice Defendants filed as to Request for Production (RFP) numbers 5, 14 and 15 addressed

12   additional documentation the Defendants provided in accordance with the court's disposition of the

13   discovery dispute as to those requests. Request # 5, which was similar to request numbers 14 and 15,

14   sought production of reports or memoranda which pertains to LCC procedures regarding opening of

15   inmate cell doors if the inmate who was then in the "day room" needed to use the toilet. Plaintiff's

16   request and Defendants' response read as follows:

17          Request for Production No. 5:
            All policy's (sic) reports or memorandums (sic) instructions to staff that require staff
18          to open inmate's cell doors if they need to use the toilet.

19          Response to Request for Production No. 5:
            Objection, assumes facts not admitted or in evidence. Objection, overly broad and
20          vague with respect to time frame.
            Notwithstanding these objections and without waiving them, Defendant is unable to
21          locate any such specific policy, report or memo which states when correctional staff is
            required to open a cell door for an inmate to use the toilet. Defendant states LCC
22          Operational Procedure 418 "Institutional Court Procedure" may be responsive to this
            request, however, it is maintained as confidential and therefore cannot be disclosed to
23          Plaintiff.

24   Doc. # 64-1 at 24.

25          As reflected above, Defendants' discovery response stated no such policy could be located, with

26   the possible exception of Lovelock Correctional Center Operational Procedure (OP) 418, which

27

28          [3] Defendants opposed Plaintiff's motion to compel (Doc. # 78) and Plaintiff replied (Doc. # 82).

1  Defendant stated could not be disclosed because it was confidential. (Doc. # 64-1 at 24.) Defendants did

2  not explain how OP 418 was confidential. Curiously, even though this policy was supposedly

3  confidential, Defendant LeGrand (Warden of LCC) had earlier responded to Plaintiff's grievance

4  regarding the same subject that:

5      I have reviewed the "Door Call" policy for the institution and your caseworker's response
       to this grievance. You were answered appropriately and completely at the Informal level.
6      Unit Door calls are not specific to Protective Segregation, LCC implements this policy
       for all Units. Unit Staff conducts a door call every 25 minutes. The doors are open for 5
7      minutes and then closed. Unit 3A staff indicated that if an inmate claims the need to use
       the toilet they are allowed to come in off the yard or off the tier and go into their cell.
8      Due to Nevada's inclement weather restrictions outside toilets would not be functional,
       therefore they are not available. Door calls will continue to be implemented throughout
9      the institution.

10 Doc. # 64-2 at 13; emphasis added.

11      Plaintiff's RFP ## 5, 14 and 15 each sought similar documents relating to Lovelock Correctional

12 Center's (LLC) "door call" policy, which is the subject of Plaintiff's civil rights action. (Doc # 11,

13 Screening Order.) As noted above, when responding to a grievance about LCC's door call policy,

14 Defendant LeGrand stated he reviewed the door call policy for the institution, which obviously

15 contradicts his discovery response which stated he was unable to locate any such policy. His response

16 to the grievance then went on to discuss the institution's door call policy and why it disposed of

17 Plaintiff's grievances on this issue. (Doc. # 64-2 at 13.) Clearly, when Defendants initially responded to

18 the Plaintiff's request for production numbers 5, 14 and 15, in contrast to the discovery response that "no

19 such policy could be located," indeed such a policy did exist as is documented by Warden LeGrand's

20 response to Plaintiff's grievance.

21      Thus, it appears that LCC does have a cell door call policy. Because of the contradiction between

22 these two responses, Defendants were directed to provide additional information regarding the cell door

23 call policy at LLC. (Doc. # 96.)

24      Defendants' Notice supplemented the response to Requests 5, 14 and 15:

25      As to the response to RPD's #5, #14 and #15, Defendants provide Lovelock Correctional
       Center's (LCC Operational Procedure 517. **[COLLINS 255: DEF SUPP RESP TO
26     RPD [1]-031-39].** Further, LCC Post-Order 14-1402 and LCC Post-Order 14-1441"
       provides door call policy, however these Post-Orders will not be provided to Plaintiff
27     because it is maintained as confidential and therefore cannot be disclosed to Plaintiff.

28 (Doc. # 95 at 2.

3

1        This supplemental response was the first reference to "Post-Orders" and the court cannot discern

2   if the door call policy referred to by Warden LeGrand arises from the Post-Orders referred to in the

3   supplemental discovery response or is a separate document or policy.[4]

4        Once again, Defendants do not explain how the documents are confidential nor do Defendants

5   assert how production of these documents (perhaps in a limited access area such as the Warden's Office)

6   would implicate any security concerns at LCC. Defendants also do not cite any NDOC authority that

7   certain Post-Orders are confidential or that LCC's door call policy is deemed confidential.

8        A mere assertion a document relevant to a § 1983 lawsuit is "confidential," without more, does

9   not satisfy a litigant's burden of justifying non-production of what otherwise appears to be a relevant

10  document. Confidentiality in and of itself is not a legitimate grounds of objection. Typically, any

11  assertion of a document's confidentiality is resolved via a protective order. Alternatively, a party, usually

12  a governmental entity or employee of a governmental defendant, will assert the document is protected

13  under the "official documents privilege." But Defendants have not lodged a claim of privilege.

14       "In a civil right case brought under federal statutes questions of privilege are resolved by federal

15  law." *Kerr v. District Court*, 511 F.2d 192, 197 (9th Cir. 1975); Fed. R. Evid. 501.  As the United States

16  District Court for the Northern District of California pointed out:

17

18       It…would make no sense to permit state law to determine what evidence is discoverable
         in cases brought pursuant to federal statutes whose central purpose is to protect citizens
         from abuses of power by state and local authorities. If state law controlled, state
19       authorities could effectively insulate themselves from constitutional norms simply by
         developing privilege doctrines that made it virtually impossible for plaintiffs to develop
20       the kind of information they need to prosecute their federal claims.

21  *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). This does not mean that courts can just

22  ignore state privilege doctrine. See id. ("federal courts generally should give some weight to privacy

23  rights that are protected by state constitutions and state statutes"); see also *Boar, Inc. v. County of Nye*,

24  2:08-cv-01091-PMP-RCJ, 2010 WL 5070888, at * 2 (D. Nev. Oct. 15, 2010).

25       Federal law governing privilege has not been codified; instead, "[t]he common law–as interpreted

26  by United States courts in the light of reason and experience–governs any claim of privilege" unless

27

28       [4] Defendants produce Operational Procedure 517 but asserted in their initial response to Plaintiff's Request for
     Production that another Operational Procedure (418) was confidential. No explanation is provided why OP 418 relating to
     door policy is confidential while OP 517 is not.

4

1  otherwise provided by "the United States Constitution; a federal statute; or rules prescribed by the

2  Supreme Court." Fed. R. Evid. 501.

3        As a result, while the court may give some weight to the State confidentiality interests contained

4  in NDOC Administrative Regulations or Operational Procedures or Post-Orders (even assuming these

5  documents deem the policies to be confidential), they do not control the determination of the

6  applicability of privilege (or confidentiality) in this case as Defendants have argued. Therefore, merely

7  because the Defendants assert a document may be "confidential" will not govern discoverability in a

8  federal court action, particularly where the objecting party fails to state why or how the document is

9  confidential nor cite any relevant federal discovery authority which upholds such an assertion of

10  confidentiality and that discovery or review of such a document is precluded.

11        As discussed above, Defendant LeGrand's grievance response relied on the application of the

12  institution's door call policy. (Doc. # 64-2 at 13.) The Defendants' discovery response stated that

13  Defendants complied with this policy but then contended the actual policy is confidential and cannot be

14  disclosed. (Doc. # 64-1 at 24). It would be incongruous to allow Defendants to cite a policy and defend

15  this case on that policy, but then assert the position the policy cannot be produced as it is "confidential."

16  ### III.  ORDER RE DISCOVERY

17        Defendants shall produce the door call policy referred to by Warden LeGrand in his response to

18  Plaintiff's grievance and/or discovery responses whether contained in an NDOC or LCC Administrative

19  Regulation, Operational Procedure or Post-Order.  The production may occur in the Warden's Office.

20  If Defendants wish to argue the door call policy is confidential and should not be produced whatsoever,

21  Defendants shall within ten (10) days submit the door call policy to the Court for an *in camera*

22  inspection in accordance with Local Rule 10-5(a) and file and serve a memorandum of points and

23  authorities satisfying Defendants' claim of confidentiality and why such an assertion should be afforded

24  deference by a U S. District Court in a civil rights action.

25  **IT IS SO ORDERED.**

26  DATED:  September 17, 2014.

27  _____
              WILLIAM G. COBB

28                UNITED STATES MAGISTRATE JUDGE