**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RONALD COLLINS,                )     3:13-cv-00255-RCJ-WGC
        Plaintiff,              )     **ORDER**
    vs.                              )
NODC, et al.,                         )
        Defendants.        )
_____)

Before the court is Defendants' response to the court's September 17, 2014 Order [Docket #95] regarding production of certain Nevada Department of Corrections procedures called "Post Orders.". (Doc. # 103.)[1] The history behind Defendants' response is outlined in the court's earlier order regarding the parties' discovery dispute. Although court will not reiterate everything contained in its prior order, to maintain a proper historical understanding of the case, a review of the relevant facts would be important.

**BACKGROUND**

The court's screening order allowed Plaintiff to pursue a cause of action, among others, that the defendants' "door call" policy precluded him reasonable access to a toilet: "[t]he unavailability of toilets for limited periods of time does not violate the Eighth Amendment, but denying toilet access to an extent that inmates can soil themselves can." (Doc. # 11 at 5; citations omitted.)

Prior to the commencement of this litigation, Plaintiff had grieved the subject of the application of Defendants' door call policy. In response to Plaintiff's grievance, Warden LeGrand stated:

---
[1] Refers to court's docket number.

<u>I have reviewed the "Door Call" policy for the institution</u> and your caseworker's response to this grievance. You were answered appropriately and completely at the Informal level. Unit Door calls are not specific to Protective Segregation, LCC implements this policy for all Units. Unit Staff conducts a door call every 25 minutes. The doors are open for 5 minutes and then closed. Unit 3A staff indicated that if an inmate claims the need to use the toilet they are allowed to come in off the yard or off the tier and go into their cell. Due to Nevada's inclement weather restrictions outside toilets would not be functional, therefore they are not available. Door calls will continue to be implemented throughout the institution.

(Doc. # 64-2 at 13; emphasis added.)

During discovery in this matter, Defendant LeGrand's response to this grievance apparently prompted Plaintiff to request the policy to which Warden LeGrand referred. However, other than mentioning Operational Procedure (OP) 418 – which Defendant said "may" be responsive to Plaintiff's request (but could not be disclosed, even if it was responsive, because OP 418 was "confidential") – Defendant stated he was "unable to locate any such specific policy report or memo":

<u>Request for Production No. 5</u>:
All policy's (sic) reports or memorandums (sic) instructions to staff that require staff to open inmate's cell doors if they need to use the toilet.

<u>Response to Request for Production No. 5</u>:
Objection, assumes facts not admitted or in evidence. Objection, overly broad and vague with respect to time frame.
Notwithstanding these objections and without waiving them, <u>Defendant is unable to locate any such specific policy, report or memo which states when correctional staff is required to open a cell door for an inmate to use the toilet</u>. Defendant states LCC Operational Procedure 418 "Institutional Court Procedure" may be responsive to this request, however, it is maintained as confidential and therefore cannot be disclosed to Plaintiff.

(Doc. # 64-1 at 24; emphasis added.)[2]

Because Warden LeGrand's underlying grievance response specifically referred to a door call policy – one in fact he said he reviewed prior to responding to Plaintiff's grievance – he was ordered to provide Plaintiff supplemental responses to RFPs 5, 14 and 15. His supplemental response to the pertinent RFPs reads as follows:

As to the response to RPD's #5, #14 and #15, Defendants provide Lovelock Correctional Center's (LCC Operational Procedure 517. **[COLLINS 255: DEF SUPP RESP TO RPD [1]-031-39].** Further, LCC Post-Order 14-1402 and LCC Post-Order 14-1441 provides door call policy, however these Post-Orders will not be provided to Plaintiff because it is maintained as confidential and therefore cannot be disclosed to Plaintiff.

---

[2] Plaintiff's Requests for Production (RFP) Nos. 14 and 15 were similar to the information sought in RFP 5.

2

1  (Doc. # 95 at 2; emphasis in the original.)[3]

2  Although Defendants earlier stated Operational Procedure 418 was possibly responsive to these requests, it was not produced because it was "confidential." Interestingly, Defendants located and produced yet another Operational Procedure, i.e., OP 517. As the court earlier noted, Defendants provided no explanation why OP 517 was not referenced in Defendants' initial discovery responses, or why OP 418 is confidential but that OP 517 is not. (Doc. # 97 at 3.) Defendants do not describe even in general terms how OP 418 was applicable to the door call policy, nor any explanation of its confidentiality. However, since Warden LeGrand's clarifying discovery response does not cite OP 418 as authority for Lovelock Correctional Center's door call policy, that matter will not be addressed further at this time.

The Post Orders appeared to provide the basis for the "Door Call" policy referred to by Warden LeGrand in his response to Plaintiff's grievance. (Doc. # 97 at 3.) However, Defendants declined to produce them on the grounds of "confidentiality." The Post Orders were not asserted to fall within the "Official Documents Privilege," nor did Defendants make any assertion of "privilege."

With regard to Defendants' assertion of "confidentiality" as a basis for not responding to discovery, this court stated:

> "In a civil right case brought under federal statutes questions of privilege are resolved by federal law." *Kerr v. District Court*, 511 F.2d 192, 197 (9th Cir. 1975); Fed. R. Evid. 501. As the United States District Court for the Northern District of California pointed out:
>
>> It…would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.
>
> *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). This does not mean that courts can just ignore state privilege doctrine. See id. ("federal courts generally should give some weight to privacy rights that are protected by state constitutions and state statutes"); see also *Boar, Inc. v. County of Nye*, 2:08-cv-01091-PMP-RCJ, 2010 WL 5070888, at * 2 (D. Nev. Oct. 15, 2010).

---

[3] The supplemental discovery responses were submitted on behalf of all defendants, unlike the initial response (Doc. # 64-1) which was solely on behalf of Warden LeGrand.

3

> Federal law governing privilege has not been codified; instead, "[t]he common law–as interpreted by United States courts in the light of reason and experience–governs any claim of privilege" unless otherwise provided by "the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501.
>
> As a result, while the court may give some weight to the State confidentiality interests contained in NDOC Administrative Regulations or Operational Procedures or Post-Orders (even assuming these documents deem the policies to be confidential), they do not control the determination of the applicability of privilege (or confidentiality) in this case as Defendants have argued. Therefore, merely because the Defendants assert a document may be "confidential" will not govern discoverability in a federal court action, particularly where the objecting party fails to state why or how the document is confidential nor cite any relevant federal discovery authority which upholds such an assertion of confidentiality and that discovery or review of such a document is precluded.

(Doc. # 97 at 4-5.)

Federal courts have recognized a qualified privilege for "official information." *Kerr*, 511 F.2d at 198. When a party asserts a privilege, and again, the court notes Defendants have not asserted a privilege objection, courts must engage in a balancing analysis to determine whether the potential benefits of disclosure outweigh the potential disadvantages. *Id. See also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (citation omitted); *Miller v. Panucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992).

To allow the court to undertake this balancing analysis, Defendants were therefore directed to produce for an *in camera* inspection the Post Orders outlining the door call policy referred to by Defendant LeGrand. Defendants were also provided the opportunity to argue Lovelock Correctional Center's (LCC) Post Orders pertaining to Defendants' door call policy presented certain security issues and, if so, were to identify why Defendants' claim of confidentiality should be afforded deference by a U.S. District Court in a civil rights action. (*Id.* at 5.)

In response, Defendants submitted the two Lovelock Correctional Center Post Orders identified as Post Order 14-1402 and Post Order 14-1441 for *in camera* review. (Doc. # 104.) Defendants also argued, again, certain security components of the Post Orders precluded disclosure of any component of the Post Orders. Defendants asserted the court should afford complete deference to the security aspects of the Post Orders. Defendants also rejected the court's proposal any aspects unrelated to the Post Orders referred to in the Defendants' discovery responses could be redacted and provided to Plaintiff in a secure setting, e.g., the Warden's office. (Doc. # 103 at 4.)

As the court noted in its underlying order, in a civil rights action brought under federal statutes,

1  questions of privilege are resolved by federal law; nevertheless, the court recognized the courts give
2  some weight to institutional security concerns.. (Doc. # 97 at 4.) Defendants never asserted any
3  "privilege" precluded production of Defendants' operational procedures, post orders, etc., and instead
4  totally base their argument on claims of "confidentiality." (Doc. # 103 at 4.) Defendants now contend
5  application of the *Turner v. Safley* doctrine is sufficient to preclude discovery.[4]

6  Defendants address the substance of their objection that the documents should not be produced
7  because they are confidential. (Doc. # 103.) More specifically, Defendants refer to NDOC
8  Administrative Regulation 401.03(1) which provides that "all copies of Post Orders are to be marked
9  **CONFIDENTIAL**" and that "Post Orders will not be accessible to inmates." (Doc # 103 at 3; emphasis
10 in the original.)

11 Relying on *Turner v. Safley*, Defendants assert that courts have afforded deference to prison
12 authorities with regard to the policies and practices of confidentiality established within the institutions.
13 (Doc. # 103 at 4-8.) Defendants reason that under *Turner v. Safley*, where a prison regulation encroaches
14 on a right of an inmate, the regulation is valid if reasonably related to legitimate penological interests.
15 (*Id*. at 4.) They assert that NDOC's determination that because Post Orders relate to prison operations
16 and thus are deemed confidential, this satisfies this test. (*Id*.) Defendants contend that limiting (or
17 prohibiting) inmate access to Post Orders is rationally related to safety and security concerns of the
18 institution.

19 The court finds that Defendants' application of *Turner v. Safley* to this discovery dispute is
20 misplaced. *Turner* involved the Supreme Court's determination of the *constitutionality* of certain prison
21 regulations where a class of inmates had challenged regulations related to inmate marriage and inmate-
22 to-inmate correspondence. 482 U.S. at 81. This action does not involve a challenge to the
23 constitutionality of the regulations providing for the confidentiality of institution's door call policy;
24 rather, Plaintiff's third cause of action is based on how that policy is implemented, i.e., alleged denial
25 of toilet access to the extent an inmate soils himself, which may present an Eighth Amendment issue.

---

[4] *Turner v. Safely*, 482 U.S. 78 (1987), wherein the U.S. Supreme Court instructed prison authorities should be afforded deference with regard to the policies and practices of the institutions, an argument asserted by Defendants in the present dispute.

5

The regulations concerning the confidentiality of prison regulations have only become relevant in connection with a *discovery* dispute. Defendants were not able to provide, nor is the court aware, of any authority applying *Turner* to the assertion of a privilege (or even a claim of confidentiality) in connection with a discovery dispute in a civil rights action brought under section 1983. Instead, the court finds this discovery dispute, like any other, is governed by the Federal Rules of Civil Procedure and case authority interpreting those rules.[5]

The court is mindful of the NDOC's (and Defendants') interests in the safety and security of its employees, inmates and public, as is addressed in the declaration of E.K. McDaniel (Doc. # 103-1.) The court takes those interests into account in balancing the benefits versus the potential harms that would result from disclosure of this information when considering the Defendants' *de facto* application and assertion of the official information privilege. Nevertheless, the court believes that a balance can be achieved between the Defendants' confidentiality/security issues and their discovery obligations arising under the Federal Rules of Civil Procedure.

**Post Orders 14-1402 and 14-1441**

As noted above, the Defendants have submitted the two Post Orders referred to in their discovery response regarding the door call policy. Defendants' discovery response states these Post Orders "provides (sic) door call policy." (Doc. # 95 at 2.) Each is described as a "Confidential Restricted Document." Post Order 14-1402 pertains to "Unit Three A (3A)" and Post Order 14-1441 pertains to "Administrative/Disciplinary Segregation (4A)." Defendants have highlighted certain sections of Post Order 14-1402; no such markings appear on 14-1441. In reviewing 14-1441, the court does not find any provision in this Post Order to be relevant to the institution's "door call policy" and cannot understand why it was identified as being relevant to the door call/toilet access policies.

On the other hand, certain sections of 14-1402 seem to be pertinent. Defendants have highlighted sections of 14-1402 to apparently draw attention to their potential relevance to Warden LeGrand's grievance response to Plaintiff (wherein he stated he reviewed the Lovelock Correctional Center's door

---

[5] The court invited Defendants to cite authorities which suggest Defendants' claim of confidentiality should be afforded complete deference in a discovery dispute. Other than basically relying on the *Turner* rationale, Defendants did not do so.

6

call policy). Those sections are 3.2.11, 3.7.2 and 3.19.1. These sections total seven (7) lines of text among the thirteen (12) pages of procedures/protocol. Defendants contend if this "highly-confidential information" were solely provided to Plaintiff for viewing in the Warden's office "would still result in a detriment to the safety, security, discipline and orderly operation of NDOC prisons... ." (Doc # 103 at 4.)

The declaration of E.K. McDaniel asserts similar representations this "confidential information concerning inmate movement, exercise yard movement and inmate counts" presents security concerns, presumably even if only the identified text were made available to Plaintiff in the confines of the Warden's offices. However, neither Defendants' memorandum nor the McDaniels Declaration discuss why such security was not compromised when Warden LeGrand specifically discussed LCC's door call policies in his response to Plaintiff's grievance.[6]

In reviewing the three referenced sections of Post Order 14-1402, it appears nothing is set forth in these sections which would not already be known to an inmate housed at LCC and familiar with its in-house procedures. Additionally, to the extent the inmate Plaintiff is afforded the opportunity to view these few highlighted sections, the court expresses skepticism the security concerns are as Defendants characterize them.

**CONCLUSION**

The court, after having reviewed Defendants' *in camera* submission of Post Orders 14-1402 and 14-1441, directs Defendants to produce to Plaintiff, in the confines of the Warden's Office, copies of these documents after redaction of any non-relevant sections and inclusion of only those sections which pertain to the gravamen of Count Three of Plaintiff's action. (Doc. # 11 at 5-6.) Defendants should be aware their defense of these allegations will be construed by the scope of what aspects of the Post Orders are made available to Plaintiff. As previously noted, Defendants are defending this action on the basis of compliance with certain Post Orders and Operational Policies. Defendants cannot on one hand assert as a shield certain NDOC policies and procedure but simultaneously refuse to produce that information

---

[6] LeGrand's grievance response discussed procedures similar to those which appear in 14-1402, such as when the door call procedures are implemented and for how long, the opening/closing of cell doors and the duration, that a Unit 3A staff member has discretion to open a door to return an inmate to a cell from the yard or tier, etc. (Doc. # 64-1 at 13.)

or documentation. As the court previously stated,

> As discussed above, Defendant LeGrand's grievance response relied on the application of the institution's door call policy. (Doc. # 64-2 at 13.) The Defendants' discovery response stated that Defendants complied with this policy but then contended the actual policy is confidential and cannot be disclosed. (Doc. # 64-1 at 24). It would be incongruous to allow Defendants to cite a policy and defend this case on that policy, but then assert the position the policy cannot be produced as it is "confidential."

(Doc. # 97 at 5:11-15.)

Defendants are directed to make available to Plaintiff redacted copies of Defendants' Post Orders 14-1402 and 14-1441. Copies thereof should be filed with the court under seal.

IT IS SO ORDERED.

DATED: October 10, 2014.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE