# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| RONALD COLLINS, | ) | 3:13-cv-00255-RCJ-WGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| NDOC, et al., | ) | |
| Defendants. | ) | |

Before the court are multiple filings, all of which appear to relate to this court's order directing Defendants to produce for Plaintiff's inspection redacted copies of what is described as Lovelock Correctional Center's ("LCC") "Door Call Policy." Doc. # 109.[1] The background of this discovery dispute is outlined in this court's orders, Doc. ## 97 and 109.

**I. Doc. ## 111, 115, 122, 125**

The first document in this series is Plaintiff's Motion for Court Order, Ordering Defendants to Make Discovery Requested Documents Available to Plaintiff." (Doc. # 111.) Plaintiff complains that he has not been afforded access to two redacted versions of Post Orders 14-1402 and 14-1441 which Defendants were directed to allow Plaintiff to inspect in the confines of the Warden's Office. (Doc. # 109 at 7.) Defendants opposed Plaintiff's motion, stating Plaintiff had not properly "kited" the Warden's Office to review the subject Post Orders. (Doc. # 115.) Defendants also submitted a "Notice of Compliance with Court's Order [Docket 109]," reflecting Defendants were going to file redacted versions of the subject Post Orders under seal. (Doc. # 112.)

---

[1] Refers to court's docket number.

Plaintiff replied in two filings, stating that despite "kiting" the Warden's Office, he has not been provided access to the subject documents. Doc. ## 122 and 125.) Doc. # 125 at 5 purports to be a copy of an inmate request form wherein it appears Plaintiff had requested access to the documents provided the Warden by the Attorney General's Office. The document further indicates the Warden's Office is not in possession of any documents and on November 6, 2014, asked Plaintiff to clarify, i.e., "to what are you referring." (*Id*.)

There does not appear to be any further filing by Plaintiff, at least among this series of documents, wherein Plaintiff clarified with the Warden's Office that he wanted to review the redacted Door Call policy document.

**II.  Doc. ## 112, 126, 130, 131, 134 and 139**

This series of documents commenced with Doc. # 112, Defendants' Notice of Compliance which was filed in response to this court's order regarding the parties' discovery dispute concerning LCC's Door Call Policy. (Doc. # 109.) As stated above, the Notice represented Defendants' counsel would file redacted versions of LCC's Post Orders under seal.

Plaintiff objected to Defendants' Notice in his filing entitled, "Objection to Defendants' Notice of Compliance with Court's Order [Docket #112] and Their Exhibits Post Order 14-1402 (Def 001-013) and 14-1441 (Def. 014-2020). A and B." (Doc # 126.)  As best as the court can ascertain, Plaintiff argues the door call policy Defendants produced was dated 2014m which means it was not in existence in 2010 when the events relating to Plaintiff's complaints about Defendants' door call policy occurred, i.e., 2010. (Screening Order, Doc. # 11 at 5.) Plaintiff apparently solicits an order from the court that Defendants are to admit "their (sic) was no actual written policy in effect during Plaintiff's complaints listed in Claim three." (Doc. # 126 at 3.)[2]

Defendants responded in Doc. # 130, stating they would provide Plaintiff the redacted versions of the LCC Post Orders which Plaintiff could "kite" to review in the Warden's Office. Defendants did not appear to address the question of whether Post Orders 14-1402 or 14-1441 were in effect at the time of Plaintiff's civil rights claims. However, the Post Orders Defendants indicated they would provide the

---

[2] Most of the exhibits accompanying Doc. # 126 pertained to Plaintiff's grievances and Defendants' responses relative to the Door Call Policy.

Warden's Office were identified as 10-1406 and 12-1441, as opposed to Post Orders 14-1402 and 14-1441, which were previously referenced in Defendants' Notice of Compliance. The court reviewed Post Orders 14-1402 and 14-1441 in camera; the court has not inspected 10-1406 or 12-1441 (Doc. # 109.) Regardless, it appears Defendants submitted the newly produced documents, either in part or in total, to Plaintiff.

Plaintiff filed a reply to Defendants' response which briefly addressed the subject of the apparent discrepancy in the nomenclature or effective dates of the Post Orders Defendants identified and produced. (Doc. # 131.) Plaintiff argues the Defendants have misled the court. (*Id*.) In Doc. # 134, Plaintiff lodged an objection to Defendants' submission of Post Orders 10-1406 and 12-1441 which were not identified in Defendants' response to Plaintiff's objection (Doc. # 130). Plaintiff also argued the Post Orders "are not consistent with the events listed in Plaintiff's Complaint, for Plaintiff lived in Unit 3A and not 3B as Defendants sent. See Exhibit A - Post Order." (Doc. # 134 at 2; emphasis in the original.) Plaintiff also argues the policies in the various Post Orders are inconsistent. (*Id*.)

In further rebuttal on the subject, Defendants filed their "Opposition to Plaintiff's Objection to Defendants' Docket 130 Post Orders 10-1406 and 12-1441." (Doc. # 139.) In this submission, Defendants state they provided Plaintiff the previously unidentified Post Orders (10-1406 and 12-1441) because, as Plaintiff states, he was housed in both Units 4A and 3B at LCC. Therefore, in addition to Post Orders 14-1402 and 14-1441, Defendants have provided 10-1406 (Post Orders for 3B) and 12-1441 (Post Orders for 4A), as well as apparently certain additional Post Orders for these housing units, 11-1402, 12-1402 and 13-1402.[3]

**III.  Doc. ## 121, 124 and 128**

Doc. # 121 is another objection by Plaintiff to "Defendants' Production of Supplemental Exhibit." Plaintiff contests whether certain of the documents Defendants produced with respect to Defendants' door call policy are valid, questioning, *inter alia*, whether the policies were properly signed or whether

---

[3] Defendants' Opposition (Doc. # 139) did not include copies of the most recent Post Orders to which Defendants refer, i.e., 11-1402, 12-1402 and 13-1402. These documents were supposed to have been made available to Plaintiff by kiting the Warden's Office where "he will be able to review the redacted Post Orders." (Doc. # 139 at 2.) Since there has been no further filing by Plaintiff on this subject, the court assumes Plaintiff has now been able to review all of the Post Orders Defendants have cited.

they were in effect on the date in question. (*Id.* at 1-2.)

Defendants responded to Plaintiff's objection. (Doc. # 124.) Defendants do not directly address any of Plaintiff's arguments contained in Doc. # 121, but instead "provide the court and Plaintiff Lovelock Correctional Center Operational Procedure 517 dated July 2009 (Ex. A, Bates stamped, DEF DISC 042-054). Without suggesting why production of O.P. 517 cured any of Plaintiff's objections, Defendants summarily concluded "Plaintiff's Objection should be denied." (Doc. # 124 at 1.)

Plaintiff's reply memorandum (Doc. # 128) objects to O.P. 527 as not being signed and not in effect during the events listed in Plaintiff's complaint. Plaintiff contends that Defendants have failed to produce a door call policy upon which Warden LeGrand relied in providing his discovery responses.

## DISCUSSION

The issue of the door call procedures was discussed in at least two prior orders of the Court, Doc. # 97 (September 17, 2014) and Doc. # 109 (October 10, 2014). Subsequent to those orders - which only addressed Post Orders 14-1402 and 14-1441, it appears Defendants have produced several other Post Orders and Operational Procedures. The genesis of these orders was Defendant LeGrand's response to Plaintiff's grievance relating to LCC's door call policy. In response to Plaintiff's grievance, Warden LeGrand stated,

> I have reviewed the "Door Call" policy for the institution and your caseworker's response to this grievance. You were answered appropriately and completely at the Informal level. Unit Door calls are not specific to Protective Segregation, LCC implements this policy for all Units. Unit Staff conducts a door call every 25 minutes. The doors are open for 5 minutes and then closed. Unit 3A staff indicated that if an inmate claims the need to use the toilet they are allowed to come in off the yard or off the tier and go into their cell. Due to Nevada's inclement weather restrictions outside toilets would not be functional, therefore they are not available. Door calls will continue to be implemented throughout the institution.

(Doc. # 64-2 at 13.)

In a subsequent discovery response, Warden LeGrand stated he was "unable to locate any specific policy, report or memo which states when correctional staff is required to open a cell door for an inmate." However, he went on to refer to Operational Procedure 418, which he stated "may" be responsive but even if it were, could not be produced because it was confidential. (Doc. # 74-1 at 24.) On the other hand, Operational Procedure 517 was produced with Defendants' Response to Plaintiff's

4

Objection, Doc. #124).[4]

Defendants' production of multiple Operational Procedures and Post Orders beyond those reviewed by the court in camera has left this court confused as to which exactly governed Lovelock Correctional Center's "Door Call" Policy, if any, when the events referred to in Plaintiff's Complaint occurred. (2010; Doc. # 11 at 5.) Therefore, within **twenty (20) days** Defendant LeGrand shall submit a Declaration clarifying his discovery responses with regard to LCC's Door Call Policy which was in effect in 2010 and, if different, the Door Call Policy in effect when Defendant LeGrand responded to Plaintiff's grievance (Doc. # 64-2 at 13). Defendant LeGrand shall further identify any LCC Operational Procedure or Post Orders upon which the policy or policies were based and explain the correlation of the Post Orders or Operational Procedures to the LCC Door Call policy.  Any Post Order or Operational Procedure to which reference is made shall also be submitted in pertinent part with Warden LeGrand's Declaration. If necessary, the document shall be filed under seal, but if so, Plaintiff shall promptly be notified of when he may inspect such documents in a secure setting at the correctional facility where he is incarcerated.

**IT IS SO ORDERED.**

DATED: December 30, 2014.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

---

[4] O.P. 517, which accompanied Defendants' earlier Notice Regarding Supplemental Responses, bears an effective date of July 2013, which supersedes a predecessor document bearing an effective date of 2011 (Doc. # 95-1 at 1.) The version of O.P. 517 which accompanies Defendants' Response to Plaintiff's Objection bears an effective date of July 2009 (reviewed on July 2010). (Doc. #124-1 at 2.) It is unknown whether another version of O.P. 517 was in effect for 2010-2011 or whether the 2009 version (Doc. #124-1 at 2) carried through until the adoption of the 2011 version. (Doc. #95-1 at 1.)