1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6   RONALD COLLINS,                              3:13-cv-00255-RCJ-WGC

7                          Plaintiff,    **REPORT & RECOMMENDATION OF**
                                         **U.S. MAGISTRATE JUDGE**
8         v.

9   E.K. MCDANIEL, et. al.,

10                        Defendants.

11

12        This Report and Recommendation is made to the Honorable Robert C. Jones, United

13  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14  28  U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15  Plaintiff's Motion for Summary Judgment on Count Three against Defendant LeGrand. (Doc.

16  # 132.)[1] LeGrand filed a response (Doc. # 135) and Plaintiff filed a reply (Doc. # 141).

17        After a thorough review, the court recommends that Plaintiff's motion be denied.

18                               **I. BACKGROUND**

19        Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

20  proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., Doc. # 14.) The

21  events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional

22  Center (LCC). (*Id.*) Defendants are LCC Warden Robert LeGrand and Correctional Officers

23  Jethro Parks, Jonathan Ball (erroneously named as Officer Bail) and Joseph Baros. (*Id.*;

24  Screening Order, Doc. # 11.)

25        On screening, Plaintiff was allowed to proceed with a retaliation claim in Count II against

26  Ball, Parks, Baros and LeGrand. (Doc. # 11 at 4.) Plaintiff alleges that Ball and/or Parks took his

27  _____

28        [1] Refers to court's docket number. Defendants have since filed their own motion for summary judgment
    (Doc. # 172) which will be addressed in a separate report and recommendation.

1    work boots and broke his stereo because he filed a grievance over prior incidents where they

2    allegedly took a watch and razor from him. He also alleges that Baros disposed of over three

3    hundred dollars worth of his compact discs (CDs) at the direction of LeGrand pursuant to an

4    alleged policy of LeGrand for staff to retaliate against inmates for filing grievances.

5        Plaintiff was also allowed to proceed with an Eighth Amendment claim against LeGrand

6    in Count III, that is the subject of Plaintiff's motion. (Doc. # 11 at 5-6.) This is based on his

7    allegation that in 2010 LeGrand implemented a policy requiring five minute cell door calls each

8    hour, as a form of punishment. He avers that inmates were required to stand in front of their cell

9    doors with their hand held up. The entire process would take twenty or more minutes to complete

10   given the size of the unit. If both inmates from a double-bunked cell needed to use the toilet

11   during door call, only one would be able to do so. As a result, inmates, including Plaintiff, had

12   urinated or defecated in their pants. Plaintiff further alleges that he has a low back condition

13   which will require surgery that causes his lower body to lose sensation if he stands for more than

14   three to five minutes. If he does not get to a toilet quickly, he will urinate in his pants. He alleges

15   that the door call policy causes him extreme pain because standing with his hand up only

16   worsens his condition. After enduring this pain and urinating and defecating on himself a number

17   of times, he claims that he informed the unit officers of his condition and requested to be excused

18   from door call and/or that he be allowed to use the toilet during door call. They told him

19   LeGrand said there would be no exceptions. Plaintiff also states that he experienced the presence

20   and smell of excrement after his mentally ill cellmate would defecate in his pants and attempt to

21   clean his clothes in the cell sink and toilet. He contends that LeGrand denied his grievance

22   requests that he be allowed to use the toilet during door call.

23       Finally, Plaintiff was allowed to proceed with a First Amendment (retaliation and access

24   to courts) claim in Count IV against Baros and LeGrand. (Doc. # 11 at 6.) Plaintiff refers back to

25   the incident alleged in Count II where Baros allegedly disposed of Plaintiff's CDs. Plaintiff

26   contends that thereafter, on January 15, 2013, Baros and another officer conducted another

27   inventory of Plaintiff's property in his cell without him being present and over his objection.

28   Plaintiff claims Baros disposed of and/or damaged his legal and personal property in retaliation

1    for his filing a grievance against Baros related to the prior incident. He further alleges that Baros

2    disposal and/or destruction of the legal property impaired his ability to pursue certain legal

3    claims identified in the complaint. He claims that LeGrand created a policy of searching and

4    packing inmate property without the inmate being present so that they can steal inmate legal

5    materials brought against LeGrand and his officers.

6         Plaintiff moves for summary judgment as to Count III against LeGrand. (Doc. # 132.) He

7    argues that LeGrand created or approved a policy directing officers to do cell door calls in his

8    unit, and the officers would not allow Plaintiff into his cell to use the bathroom when it was not

9    door call resulting in Plaintiff urinating and defecating in his pants. (Doc. # 132.) Plaintiff

10   contends that he grieved the matter which apprised LeGrand of the allegedly unconstitutional

11   policy, and LeGrand responded that the door call policy was constitutional and did nothing to

12   remedy the situation. (*Id*.)

13                    **II. LEGAL STANDARD- SUMMARY JUDGMENT**

14        "The purpose of summary judgment is to avoid unnecessary trials when there is no

15   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

16   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

17   judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

18   525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

19   (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

20   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21   Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

22   issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

23   250 (1986).

24        A party asserting that a fact cannot be or is genuinely disputed must support the
          assertion by:
25        (A) citing to particular parts of materials in the record, including depositions,
          documents, electronically stored information, affidavits or declarations,
26        stipulations (including those made for purposes of the motion only), admissions,
          interrogatory answers, or other materials; or
27        (B) showing that the materials cited do not establish the absence or presence of a
          genuine dispute, or that an adverse party cannot produce admissible evidence to
28        support the fact.

1    Fed. R. Civ. P. 56(c)(1)(A), (B).

2          If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

3    made on personal knowledge, set out facts that would be admissible in evidence, and show that

4    the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

5           In evaluating whether or not summary judgment is appropriate, three steps are necessary:

6    (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

7    to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

8    *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

9    the outcome of the suit under the governing law will properly preclude the entry of summary

10   judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

11          In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

12   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

13   come forward with evidence which would entitle it to a directed verdict if the evidence went

14   uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

15   the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

16   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

17   omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

18   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

19   an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party

20   failed to make a showing sufficient to establish an element essential to that party's case on which

21   that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-

22   25 (1986).

23          If the moving party satisfies its initial burden, the burden shifts to the opposing party to

24   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

25   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

26   material fact, the opposing party need not establish a genuine dispute of material fact

27   conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a

28   jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*

*v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50 (citations omitted).

## III. DISCUSSION

### A. Preliminary Considerations

Preliminarily, it should be noted that Plaintiff's motion and supporting exhibits include various references to the sanitary condition of showers in his unit at LCC, and treatment or a lack of treatment for his back condition. Plaintiff was not permitted to proceed with claims in this action related to these issues. First, the shower issue was not referenced in his amended complaint. Second, while Plaintiff mentioned his health condition it was in relation to his allegation that it caused him to urinate in his pants if he was required to stand too long such as he

1   when during door call. He did not include specific allegations regarding his medical treatment;

2   nor was this the focus of his amended complaint. As a result, the court's analysis will focus on

3   Plaintiff's argument insofar as it relates to LeGrand's alleged violation of his Eighth Amendment

4   rights in connection with the door call policy which he contends deprived him of access to a

5   toilet and caused him to urinate and defecate in his pants.

6   **B. Summary of Argument and Evidence**

7           Plaintiff has presented evidence that he informed LeGrand via grievances that officers

8   would not let him into his cell to use the bathroom unless it was door call, which resulted in his

9   urinating and defecating in his pants, and that LeGrand took no action to remedy the situation.

10  (Pl.'s Decl., Doc. # 132-1 at 2 ¶¶ 3-4.)

11          According to an informal level grievance Plaintiff submitted (number 20062935232) on

12  December 16, 2011, inmates in his unit were given a five-minute cell door call when they could

13  get into their cell and use the toilet. (Doc. # 132-1 at 21-24.) In between door calls, when an

14  inmate was on the recreational yard or in the cell tier, the inmate had no access to a toilet and the

15  officers would not open the cell doors to let inmates use the toilet. (*Id*.) This resulted in inmates,

16  including Plaintiff, urinating or defecating in their pants. (*Id*.) In response to his informal level

17  grievance he was advised, in pertinent part:

18          Unit staff conducts a door call every 25 minutes. The doors are open for 5 minutes
            and then closed. I have spoken with all Unit 3A staff and each one of them have
19          indicated that if an inmate claims the need to use the toilet they are allowed to
            come in off the yard or off the tier and go into their cell. Due to Nevada[']s
20          inclement weather restrictions outside toilets would not be functional, therefore
            they are not available. Door calls will continue to be implemented. Grievance
21          denied.

22  (Doc. # 132-1 at 20.) Plaintiff reiterated his complaint and requested that staff be ordered to let

23  inmates access their cells when needed to use the toilet in a first level grievance. (Doc. # 132-1 at

24  19.) LeGrand responded to the grievance by denying it and asserting the identical reasoning

25  provided with respect to the informal level grievance. (*Id*. at 18.) In the second and final level of

26  this grievance, Plaintiff asserted that officers would not let inmates in to their cells to use the

27  toilet until door call. (Doc. # 132-1 at 17.) The responder indicated that he agreed with LeGrand

28

- 6 -

1    and also stated that "[d]oor calls are a reasonable tool used to manage inmate movement and

2    maintain security." (*Id*. at 16.)

3        Plaintiff complained of this issue in another grievance (number 20062935296) on

4    December 27, 2011. (Doc. # 132-1 at 31-32.) He reiterated that inmates could not use the toilet

5    in between door calls, leaving inmates to urinate or defecate in their pants. (*Id*.) The response to

6    the informal level grievance was: "Door calls are not unconstitutional, nor are they cruel and

7    unusual punishment. Control of inmate movement is a security matter. Grievance denied."

8    (Doc. # 132-1 at 30.) Plaintiff proceeded with his first level grievance, which was answered by

9    LeGrand: "You were answered correctly. 30 minute door calls are not unconstitutional, nor are

10   they cruel and unusual punishment. Control of inmate movement is a security matter. The unit

11   officers will make an exception if an inmate indicates they have an emergency." (Doc. # 132-1 at

12   28-29.) In his second level grievance, Plaintiff asserted that officers were not opening doors for

13   the use of the toilet, and that he had urinated in his pants as a result. (Doc. # 132-1 at 27.) The

14   second level grievance was also denied. (*Id*. at 26.)

15        In a discovery response, LeGrand concedes that NDOC and LCC have a door call policy,

16   and while he did not create it, he directed LCC staff to enforce it in Plaintiff's unit following a

17   series of fights/assaults in that unit. (Doc. # 132-1 at 6, response to Pl.'s Interrogatory 1.) In

18   addition, LeGrand stated: "If an inmate requires the use of the bathroom, he may wait for the 1/2

19   hour door call or if an inmate requires the use of the bathroom, and cannot wait for the 'door

20   call', he should notify the officer on duty." (Doc. # 132-1 at 8, response to Pl.'s Interrogatory 3.)

21        In his opposition to Plaintiff's motion, LeGrand asserts that LCC Post Order 12-1441

22   which provides "detailed information about how LCC conducts cell searches, inmate movement,

23   exercise yard, showers, inmate cell cleaning, inmate counts, feeding, pill call, etc.," does not

24   state that inmates may not use the restrooms or that NDOC employees should deny inmates

25   access to use the restrooms. (Doc. # 135 at 3-4; Ex. A, Doc. # 137-1.) Similarly, LCC Post Order

26   10-1406 provides the conduct for unit door calls, and does not state that inmates may not use the

27   restrooms or that NDOC employees must not open doors for inmates to use the restrooms.

28

1    (Doc. # 135 at 4; Ex. C, Doc. # 137-2.) LeGrand asserts that none of the Post Orders for

2    Plaintiff's unit from 2011, 2012 or 2013 state that inmates may not use the restrooms or that

3    NDOC employees should deny inmates access to restrooms. (Doc. # 135 at 4; Ex. E, Doc. # 137-

4    3; Ex. F, Doc. # 137-4; Ex. G, Doc. # 137-5.)

5           LeGrand also points out that LCC's door call policy provides that the door calls are

6    conducted on the half hour and last for ten minutes, not for five minutes on the hour as Plaintiff

7    alleges. (Doc. # 135 at 4; LeGrand Decl., Doc. # 135-2 at 2 ¶ 4.) He maintains that the door call

8    policy "is a common practice security measure" that was applied to Unit 3A and 3B after a series

9    of assaults in the protective segregation units. (*Id.*) LeGrand claims that LCC allows for inmate

10   entry into cells in the event of an "emergency" such as that described by Plaintiff, and Plaintiff

11   was advised of this in LeGrand's response to Plaintiff's grievance. (*Id.* ¶ 5.) He asserts that he

12   never enforced an order or policy that NDOC staff deny access or a request to open a cell door at

13   an inmate's request to use the restroom. (*Id.* ¶¶ 6-7.)

14   **C. Analysis**

15          The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S.

16   Const. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the

17   conditions under which [he] is confined are subject to scrutiny under the Eighth Amendment."

18   *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Although conditions of confinement in prison may

19   be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of

20   life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide

21   prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint*

22   *v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*

23   *v. Conner*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000);

24   *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). "The circumstances, nature, and duration

25   of a deprivation of ... necessities must be considered in determining whether a constitutional

26   violation has occurred." *Johnson*, 217 F.3d at 731. "The more basic the need, the shorter the time

27   it can be withheld." *Hoptowit*, 682 F.2d at 1259; *see also Anderson v. County of Kern*, 45 F.3d

28

1310, 1214, *as amended*, 75 F.3d 448 (9th Cir. 1995) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.").

Where a prisoner alleges injuries stemming from unsafe or unhealthy conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). This standard involves an objective and subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Second, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835. In a conditions of confinement case such as this, the inmate is required to show "that the defendant officials had actual knowledge of the plaintiffs' basic human needs and deliberately refused to meet those needs." *Id*. at 734.

While "toilets can be unavailable for some period of time without violating the Eighth Amendment," a substantial deprivation of sanitary conditions will be sufficient to satisfy the objective component of the Eighth Amendment deliberate indifference standard. *Johnson,* 217 F.3d at 732-33. In *Johnson*, the inmates were subjected to conditions following a prison riot including, *inter alia*, the inmates being housed on the yard while an investigation was being conducted with no toilet facilities for a period of time. *Johnson,* 217 F.3d at 730. The first night the inmates had no access to toilets at all, and could not move from their prone position to relieve themselves. *Id.* Then, at some point the next morning, two portable toilets were brought to the yard but by that point some inmates had urinated or defecated on their clothing which they wore for the remaining days of the four-day investigation. *Id*. Sometime later that day, some of the prison's indoor toilet facilities were repaired and made available to the inmates. *Id*. Following another riot that occurred several months later, the inmates were sequestered to the yard again while the seventeen-hour investigation ensued. *Id*. "When the inmates needed to urinate, the guards allowed them to get to their knees, crawl a few feet from where they lay, and

1  relieve themselves on the ground." *Id*. "Because of their close proximity to each other,

2  [however,] inmates sometimes urinated on their neighbors; even when they did not, the urine

3  sometimes pooled and ran onto other inmates." *Id*. There, the Ninth Circuit concluded that the

4  prisoners provided evidence of substantial deprivations relative to the sanitation conditions they

5  faced sufficient to satisfy the objective prong of the Eighth Amendment inquiry. *Id*. at 732

6         Here, Plaintiff provides a declaration stating that after the door call policy took effect at

7  LCC in 2011 inmates could not enter their cells other than at door call, and Plaintiff urinated and

8  defecated in his pants when he had to use the bathroom and was not permitted in his cell when it

9  was not door call even after informing officers that he had to use the bathroom. (Doc. # 132-1 at

10  2.) Plaintiff does not specifically state how many times this occurred, but he states in his

11  declaration that he apprised his caseworker of urinating, to no avail, and that it occurred

12  thereafter, at which point he sent grievances to which LeGrand responded. (*Id*. at 2-3.) He further

13  states that he repeatedly requested that the officers let him into his cell to use the toilet, with no

14  success. (*Id*. at 3.) In addition, he contends that as a result of the door call policy, he had to lie on

15  the floor in front of his cell with his pants soiled several times while waiting for door call. (*Id*.)

16  Pursuant to *Johnson,* the court concludes that Plaintiff has submitted sufficient evidence to

17  satisfy the objective prong of his Eighth Amendment claim—that his deprivation is sufficiently

18  serious.

19         Next, Plaintiff provides evidence that LeGrand was put on notice that officers were not

20  allowing him into his cell to use the toilet when it was not door call time, resulting in his

21  urinating and defecating in his pants. This evidence is in the form of his declaration, the

22  grievances to which LeGrand responded, and is further supported by LeGrand's responses to

23  Plaintiff's interrogatories.  LeGrand confirmed that he directed his officers to enforce the door

24  call policy. (Doc. # 132-1 at 7.) Plaintiff specifically asked whether officers were given any

25  instructions regarding opening inmate cell doors to use the bathroom when it was not door call

26  time. (*Id*. at 8.) LeGrand stated that if an inmate required the use of a bathroom, he could wait for

27  the half-hour door call, or if the inmate could not wait he should notify the officer on duty. (*Id*.)

28  Plaintiff advised LeGrand in his grievances that he did request that officers open the door when

1   he needed to use the toilet when it was not door call time, and they refused his requests. LeGrand

2   advised Plaintiff that door calls were conducted every twenty-five minutes, and the doors were

3   opened for five minutes and then closed, and that Unit 3A staff indicated that if an inmate claims

4   the need to use the toilet they are allowed to come in off the yard or off the tier and go into their

5   cell. (Doc. # 132-1 at 18.)

6        In his second grievance on this issue, LeGrand responded that the door calls were not

7   unconstitutional, and noted that the officers would "make an exception if an inmate indicates

8   they have an emergency." (Doc. # 132-1 at 28.)

9        LeGrand's grievance responses create a genuine dispute of material fact as to whether or

10  not officers were allowing inmates to use the toilet in their cells when it was not door call time

11  such that LeGrand knew that Plaintiff's basic human needs were being deprived, and deliberately

12  refused to meet those needs. LeGrand's response indicates that he was advised that unit officers

13  were in fact letting inmates into their cells to use the bathroom when it was not tier time and took

14  the position that officers would make an exception if an inmate indicated there was an

15  emergency. Moreover, LeGrand states in his own declaration that he did not enforce a cell door

16  policy or post order that ordered NDOC staff to not permit an inmate to use the restroom. (Doc.

17  # 135-2 at 2.) While Plaintiff disputes this was the case, this issue will have to be resolved by the

18  fact-finder.

19       Therefore, Plaintiff's motion for summary judgment as to Count III against LeGrand

20  should be denied.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING**

Plaintiff's motion for summary judgment as to Count III against LeGrand (Doc. # 132).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

this Report and Recommendation within fourteen days of receipt. These objections should be

titled "Objections to Magistrate Judge's Report and Recommendation" and should be

accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of

appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

until entry of judgment by the district court.

DATED:  June 1, 2015.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE