1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

RONALD COLLINS,                                    Case No. 3:13-cv-00255-RCJ-WGC

7

Plaintiff,     **REPORT & RECOMMENDATION OF**

8

v.                                        **U.S. MAGISTRATE JUDGE**

9

E.K. MCDANIEL, et. al.,

10

Defendants.

11

12

        This Report and Recommendation is made to the Honorable Robert C. Jones, United

13

States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14

28  U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15

Defendants' Motion for Summary Judgment. (ECF No. 172.)[1] Plaintiff filed a response

16

(ECF No. 179 and exhibits at ECF Nos. 180, 181), and Defendants filed a reply (ECF No. 192).

17

        After a thorough review, the court recommends that Defendants' motion be granted in

18

part and denied in part.

19

                                    **I. BACKGROUND**

20

        Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

21

proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 14.) The

22

events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional

23

Center (LCC). (*Id.*) Defendants are LCC Warden Robert LeGrand and Correctional Officers

24

Jethro Parks, Jonathan Ball (erroneously named as Officer Bail) and Joseph Baros. (*Id.*;

25

Screening Order, ECF No. 11.)

26

        On screening, Plaintiff was allowed to proceed with retaliation claims in Count II against

27

Ball, Parks, Baros and LeGrand; an Eighth Amendment claim against LeGrand in Count III; and

28

        [1] Refers to court's Electronic Case Filing number.

1    retaliation and access to courts claims against Baros and LeGrand in Count IV. (ECF No. 11.)

2    These claims will now be summarized in more detail.

3    **A. COUNT II**

4         In Count II, Plaintiff alleges that on February 26, 2012, he was taken to the segregation

5    unit for an alleged rule violation, and his property was searched by Officer Kassebaum and sent

6    to Unit 7. (ECF No. 14 at 9 ¶ 1.) At that time, his stereo was not deemed altered or broken. (*Id.*)

7    On March 1, 2012, he was taken from Unit 7 to the segregation Unit 4A, where defendant Parks

8    demanded he hand over his watch, claiming it was unauthorized. (*Id.* ¶ 2.) Plaintiff gave Parks

9    his watch and asked for an unauthorized property form for the watch, to which Parks responded:

10   "What watch?" (*Id.* ¶ 3.) That same day, Officer Deich searched Plaintiff's property and gave

11   Plaintiff all of the property he was allowed to have in Unit 4A, and placed all of the property he

12   could not have in the Unit4A property room. (*Id.* ¶ 4.) His stereo and other appliances were not

13   deemed altered or broken at that time. (*Id.*) He contends that between February 26, 2012 and

14   March 1, 2012, his property had been inventoried and searched by four other officers, none of

15   whom deemed Plaintiff's stereo or other appliances altered or broken. (ECF No. 14 at 10 ¶ 5.)

16        On March 7, 2012, Plaintiff went to his disciplinary hearing and was found guilty of a

17   rule violation. (ECF No. 14 at 10 ¶ 6.) Appliance restrictions were not part of his disciplinary

18   sanction; nevertheless, Ball and Parks went into his cell and took all of his appliances. (*Id.*)

19   Plaintiff subsequently asked them for an unauthorized property notification form, but Ball denied

20   his request. (*Id.* ¶ 8.) He was eventually given the form the following day. (*Id.* ¶ 9.)

21        On March 8, 2012, he filed an inmate grievance regarding the taking his watch and

22   electric razor, and gave it to Ball to put in the grievance box. (ECF No. 14 at 10-11 ¶ 10.) The

23   caseworker responded to the grievance and ordered that the watch and razor be returned. (*Id.* ¶

24   11.) Plaintiff alleges that this caused Parks and Ball to engage in retaliatory acts against him. (*Id.*

25   ¶ 12.) They commented to him that he better enjoy his watch and razor because those were the

26   only property items he would be getting back. (*Id.*)

27        Then, as a result of filing the grievance, Plaintiff avers that Ball went into the Unit 4

28   property room where his property was being stored and ripped open his plastic property bag and

removed Plaintiff's personal work boots, and told Plaintiff what he did in order to taunt him. (*Id.*
¶ 13.)

Plaintiff filed a grievance regarding Ball removing his work boots from his property bin.
(*Id.* ¶ 15.) After he filed this grievance, Plaintiff claims Parks told him: "Keep complaining and
you will keep losing more of your property." (*Id.* ¶ 18.)

On June 7, 2012, Plaintiff's disciplinary time expired and he asked Parks for his stereo
back, and Parks responded: "I already told you. You got all the property you are going to get.
You should learn not [to] complain and file grievances." (*Id.* ¶ 20.) Parks came back two hours
later with a two-page unauthorized property notification form which listed all of Plaintiff's
property that was in the Unit 4A property room as unauthorized because it was altered or broken.
(*Id.* ¶ 21.) Parks also told Plaintiff he was going to write Plaintiff up due to the altered and
broken property. (*Id.* ¶ 22.) Plaintiff maintains that his stereo and other appliances were not
broken or altered before he filed his grievances against Ball and Parks, and they broke or altered
them in retaliation against Plaintiff for filing grievances. (*Id.* ¶ 24.)

When Plaintiff moved to another unit away from Ball and Parks, he filed a grievance
regarding his stereo being broken by Ball and Parks. (*Id.* ¶ 25.) As a result of filing this
grievance, he contends that LeGrand ordered Baros to go from the unit Plaintiff had just left and
deem twelve of his compact discs (CDs) unauthorized, stating that he had no CD player. (*Id.*) He
alleges that it is LeGrand's policy for his staff to retaliate against inmates for filing grievances.
(*Id.* ¶ 26.)

Based on these allegations, Plaintiff was allowed to proceed with retaliation claims
against Ball, Parks, Baros and LeGrand. (ECF No. 11 at 4.)

**B. COUNT III**

Plaintiff alleges that in 2010, LeGrand created a policy directing his officers to conduct
five-minute door calls every hour for Units 3A and 3B. (ECF No. 14 at 15 ¶ 1.) Inmates were
required to stand in front of their cell doors with their hands up, and the doors would open. (*Id.* ¶
2.) He claims the procedure took twenty or more minutes. (*Id.*) During this process, only one
inmate in a two-inmate cell would be able to use the toilet, causing Plaintiff and others to urinate

or defecate in their pants. (*Id*. ¶ 4.) He also alleges that the officers working his unit would not open his cell door for him to use the toilet if it was not during door call, which also resulted in Plaintiff urinating or defecating in his pants. (*Id*. ¶ 5.) Plaintiff contends that he suffers from an untreated medical condition in his lower back,  and if he stands up for more than three to five minutes, his lower half falls asleep and if he cannot make it to a toilet in time he will urinate in his pants. (ECF No. 14 at 16 ¶ 6.) He told the officers about his condition and asked them to let him into his cell to use the toilet, and claims he was told: "Warden LeGrand told us no exceptions." (ECF No. 14 at 16-17 ¶ 10.) There was no toilet on the recreational yard or in the housing unit for the inmates to use when their cell doors were closed. (ECF No. 14 at 17 ¶ 14.) Plaintiff filed grievances concerning the policies and the officers' actions of not letting him in his cell to use the toilet, and LeGrand responded that the policy was not unconstitutional. (ECF No. 14 at 17-18 ¶¶ 15-16.)

Based on these allegations, Plaintiff was allowed to proceed with an Eighth Amendment claim against LeGrand. (ECF No. 11 at 5-6.)

**C. COUNT IV**

Here, Plaintiff alleges that on January 15, 2013, he was ordered by Officer Vallister and defendant Baros to pack his property to be searched, but he was not allowed to be present during the search. (ECF No. 14 at 19 ¶ 3.) He then alleges that in retaliation for filing grievance 20062952246 (which was related to the twelve CDs being deemed unauthorized), Baros disposed of several of Plaintiff's legal papers and exhibits "pertaining to Plaintiff's case Collins vs. NDOC. Music by Mail as well as damaging one of the Compact Discs Exhibits in doing so rendered Exhibit useless." (*Id*. at 20 ¶ 5.) He asserts that he missed the deadline to file his claim seeking injunctive relief regarding the twelve CDs that were sold to him as one, but that were counted as two by NDOC. (*Id*. ¶ 6.) In addition, he contends that Baros took his legal crime scene photos as well as photos of his wife. (*Id*. at 20-21 ¶ 7.) He further states that Baros took and disposed of Plaintiff's personal boots. (*Id*. at 21 ¶ 8.) He avers that LeGrand created an unconstitutional policy/custom directing his officers to search inmate property outside of their

1   presence in order to take inmate's legal documents concerning LeGrand and his officers. (*Id*. ¶

2   9.)

3          Based on these allegations, Plaintiff was allowed to proceed with First Amendment

4   retaliation and access to courts claims against Baros and LeGrand. (ECF No. 11 at 6.)

5   **D. DISPOSITIVE MOTIONS**

6          Plaintiff previously moved for summary judgment as to his Eighth Amendment claim in

7   Count III, but his motion was denied. (*See* ECF Nos. 183, 187.)

8          Defendants now move for summary judgment as to all of Plaintiff's claims. The court

9   will address each of the counts, and the parties' arguments, in turn.

10                          **II. LEGAL STANDARD**

11         "The purpose of summary judgment is to avoid unnecessary trials when there is no

12  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

13  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

14  judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

15  525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

16  (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

17  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

18  Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

19  issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

20  250 (1986).

21         A party asserting that a fact cannot be or is genuinely disputed must support the
           assertion by:

22         (A) citing to particular parts of materials in the record, including depositions,
           documents, electronically stored information, affidavits or declarations,

23         stipulations (including those made for purposes of the motion only), admissions,
           interrogatory answers, or other materials; or

24         (B) showing that the materials cited do not establish the absence or presence of a
           genuine dispute, or that an adverse party cannot produce admissible evidence to

25         support the fact.

26  Fed. R. Civ. P. 56(c)(1)(A), (B).

27

28

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation

1   omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

2   non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith*

3   *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid

4   summary judgment by relying solely on conclusory allegations that are unsupported by factual

5   data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings

6   and set forth specific facts by producing competent evidence that shows a genuine dispute of

7   material fact for trial. *Celotex*, 477 U.S. at 324.

8       That being said,

9   > [i]f a party fails to properly support an assertion of fact or fails to properly address
10  > another party's assertion of fact as required by Rule 56(c), the court may: (1) give
    > an opportunity to properly support or address the fact; (2) consider the fact
11  > undisputed for purposes of the motion; (3) grant summary judgment if the motion
    > and supporting materials—including the facts considered undisputed—show that
12  > the movant is entitled to it; or (4) issue any other appropriate order.

13  Fed. R. Civ. P. 56(e).

14      At summary judgment, the court's function is not to weigh the evidence and determine

15  the truth but to determine whether there is a genuine dispute of material fact for trial. *See*

16  *Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all

17  justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is

18  merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-

19  50 (citations omitted).

20                          **III. DISCUSSION**

21  **A. COUNT II**

22      **1. Retaliation Standard**

23      "Section 1983 provides a cause of action for prison inmates whose constitutionally

24  protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, (9th

25  Cir. 2015). Such a claim consists of five elements:

26  > (1) An assertion that a state actor took some adverse action against an inmate (2)
    > because of (3) that prisoner's protected conduct, and that such action, (4) chilled
27  > the inmate's exercise of his First Amendment rights, and (5) the action did not
    > reasonably advance a legitimate correctional goal.

28

- 7 -

1    *Jones*, 791 F.3d at 1035 (internal quotation marks omitted) (quoting *Rhodes v. Robinson*, 408

2    F.3d 559, 567-68 (9th Cir. 2005)).

3         As to the first element, "the mere *threat* of harm can be an adverse action, regardless of

4    whether it is carried out[.]" *Brodheim v. Cry,* 584 F.3d 1262, 1270 (9th Cir. 2009) (internal

5    quotation marks and citations omitted).

6         With respect to the second element, causation, there must be evidence, either direct or

7    circumstantial, to establish a link between the exercise of a constitutional right and the alleged

8    retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995). The plaintiff "need

9    only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him,

10   presents a genuine issue of material fact as to [the defendant's] intent[.]" *Brodheim*, 584 F.3d at

11   1271 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). Timing of the events

12   surrounding the alleged retaliatory action may constitute circumstantial evidence of retaliatory

13   intent. *See Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989).

14        As to the third element, the Ninth Circuit has routinely held that "[t]he First Amendment

15   guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a

16   right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.

17   1995)); *see also Rhodes*, 408 F.3d at 567 (citation omitted).

18        Insofar as the fourth element is concerned, "an objective standard governs the chilling

19   inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,'

20   but rather than the adverse action at issue 'would chill or silence a person of ordinary firmness

21   from future First Amendment activities.'" *Brodheim*, 584 F.3d 1262, 1271 (quoting *Rhodes*, 408

22   F.3d at 568-69).

23        As to the fifth and final element, it must be shown that the challenged conduct "did not

24   reasonably advance a legitimate correctional goal." *Brodheim*, 584 F.3d at 1271 (citation and

25   quotation marks omitted). In making this determination, the court must consider the factors set

26   forth in *Turner v. Safley*:

27        a valid rational connection between the prison regulation and the legitimate [and
          neutral] governmental interest put forward to justify it. If the connection between
28        the regulation and the asserted goal is arbitrary and irrational, then the regulation

- 8 -

1    fails, irrespective of whether the other factors tilt in its favor. In addition, courts
2    should consider three other factors: the existence of alternative means of
     exercising the right available to inmates; the impact accommodation of the
3    asserted constitutional right will have on guards and other inmates, and on the
     allocation of prison resources generally; and the absence of ready alternatives
4    available to the prison for achieving the governmental objectives.

5    *Brodheim*, 584 F.3d at 1272 (internal citations and quotation marks omitted).

6                 **2. Deeming Stereo and Other Appliances and CDs Unauthorized**

7            Plaintiff alleges that after he filed the grievance concerning Ball and Parks taking his

8    razor and watch (which were eventually returned to him), and the grievance concerning Ball

9    taking his personal work boots, Ball and Parks deemed all of his property in the Unit 4A property

10   room unauthorized because it was altered or broken. Eventually the property was returned

11   unaltered and not broken, except for the stereo which he claims Ball and Parks broke in

12   retaliation for his filing grievances against them. He further alleges that as a result of his filing

13   the grievance regarding Ball and Parks destroying his stereo, Baros searched his cell and deemed

14   his twelve CDs to be unauthorized property.

15           Defendants first argue that deeming the property unauthorized advanced a legitimate

16   correctional goal because when an inmate is disciplined for a rules violation, he is subject to the

17   loss of electronic equipment. (ECF No. 172 at 15, citing Exhibit D.) Defendants' Exhibit D, is

18   the declaration of Tara Carpenter. (ECF No. 172-4.) Ms. Carpenter is employed at LCC as the

19   acting associate warden. (*Id*. ¶ 1.) She states that according to NDOC's inmate disciplinary

20   manual, set forth in Administrative Regulation (AR) 707, inmate disciplinary sanctions include

21   loss of access to electrical appliances. (*Id*. ¶ 5.)

22           Her declaration then references relevant portions of AR 707, which are included as

23   Defendants' Exhibit D-1. AR 707 references a chart of disciplinary sanctions, which is to guide

24   the imposition of such sanctions. (ECF No. 172-5 at 3.) It states, *inter alia*: "Disciplinary

25   Hearing Officers involved in the inmate disciplinary process must recognize that the Chart of

26   Disciplinary Sanction cannot accurately, fairly or consistently address every situation." (*Id*.)

27   Hearing officers are instructed to "conduct an *individual* analysis of each incident for each

28   inmate" in determining the appropriate sanction to assess. (*Id*., emphasis added.) The regulation

1    provides that a loss of privileges "*may*" include the loss of electrical appliances. (*Id.* at 4,

2    emphasis added).

3            To defeat Plaintiff's retaliation claims in Count II, Defendants argue that they had a

4    legitimate penological reason for depriving Plaintiff of his electrical appliances because this is an

5    appropriate disciplinary sanction under NDOC's disciplinary manual. Defendants' argument fails

6    because while the loss of use of electrical appliances is one disciplinary sanction that a hearing

7    officer *may* impose on an inmate convicted of a rule violation, that sanction was *not* imposed on

8    Plaintiff in connection with the relevant disciplinary proceeding. Instead, the only sanctions

9    assessed against Plaintiff were restitution and time in disciplinary segregation. (ECF No. 179-2

10   at 9.) Defendants have not come forward with sufficient evidence to establish that their conduct

11   was supported by a legitimate penological interest. As a result, Defendants have not met their

12   burden of establishing they are entitled to summary judgment on Plaintiff's retaliation claim

13   concerning his stereo, other appliances and CDs in Count II based on this argument.

14           In a footnote, Defendants assert that if the court is not persuaded by this argument, which

15   it is not, that "notions of double recovery bar Plaintiff from seeking damages as to the allegedly

16   lost/destroyed stereo and compact discs" and that Plaintiff has not provided "any admissible

17   evidence indicating how each of these Defendants specifically gathered up Plaintiff's belongings

18   and allegedly destroyed/lost the same because of Plaintiff's right to grieve[.]" *Id.*

19           In asserting their damages theory, Defendants reference an earlier argument made in their

20   brief where they assert that Plaintiff's damages are limited to the cost of the items allegedly

21   destroyed or broken in this matter, *i.e.,* the stereo and the twelve CDs. They state, however, that

22   Plaintiff cannot recover for these items because he was already awarded a judgment by the

23   Pershing County Small Claims Court in *Collins v. NDOC*, No. 13 SC 8122, in the amount of

24   $20, and he is not entitled to double recovery. (*See* 172 at 4-5.)

25           Defendants' argument ignores the fact that what Plaintiff is proceeding with here is a

26   claim for *retaliation* and not a claim for *property damage*. Nor is the court convinced by

27   Defendants' conclusion, also asserted in a footnote, that the harm alleged by Plaintiff is all "non-

28   de-minimis," thereby limiting him to nominal damages. (ECF No. 172 at 7 n. 2.) As Defendants

1   acknowledge in their brief (ECF No. 172 at 8), Plaintiff must first establish liability on his

2   retaliation claim before damages can be assessed.

3          The inclusion of a conclusory statement in a footnote that Plaintiff has no admissible

4   evidence to support his retaliation claims in Count II is insufficient for Defendants to meet their

5   burden under Rule 56. Under Rule 56 a party may meet its burden when it shows that the adverse

6   party cannot produce admissible evidence to support a claim, but the moving party must do just

7   that, "show" that the adverse party cannot produce that evidence.  Fed. R. Civ. P. 56(c)(1)(B).

8   The rule uses the word "show," so it appears that, at a minimum, the moving party must provide

9   an explanation to the court of why it believes the opposing party has no admissible evidence to

10  support a claim. *See, e.g., Celotex*, 477 U.S. at 325 ("the burden on the moving party may be

11  discharged by 'showing'−that is, pointing out to the district court−that there is an absence of

12  evidence to support the nonmoving party's case"). Defendants have not done so.

13         Even if this footnote were sufficient, Plaintiff has provided evidence in connection with

14  his opposition to raise a genuine dispute of material fact to defeat Defendants' motion for

15  summary judgment on this basis, at least as to his claim concerning the stereo and appliances

16  against Parks, Ball and LeGrand. He presents specific evidence in the form of his own

17  declaration and grievances he filed. He provides evidence that Defendants took adverse action

18  against him by threatening he would not get his other property back, and then deeming his

19  property (stereo, other appliances and CDs) unauthorized. (Pl.'s Decl., ECF No. 179-1 at ¶¶ 5, 6,

20  14, 15; ECF No. 179-2 at 38-39 (NDOC unauthorized property notification form dated June 8,

21  2012 listing all the items as broken or altered).)

22         He also submits evidence to support the second and third elements of his retaliation

23  claim: that the officers took adverse action because of his protected conduct. It is well settled that

24  filing grievances constitutes protected conduct for purposes of a First Amendment retaliation

25  claim. Plaintiff has included evidence in his declaration that Parks and Ball were mad that

26  Plaintiff got his watch and razor back that they had taken from him and had threatened him that

27  he would not get any more property back and that he should stop filing grievances. (ECF No.

28  179-1 ¶¶ 10-11, 13, 14.)  In addition, the timing of the events constitutes circumstantial evidence

of retaliatory intent. Plaintiff gave Ball a three-page grievance regarding the taking of his watch and razor blades on March 8, 2012. (ECF No. 179-1 ¶ 8; ECF No. 179-2 at 10-12 (March 8, 2012 grievance).) It was ordered that those items be given back. (ECF No. 179-1 ¶ 9, 179-2 at 10-12.) He contends that shortly thereafter, Ball took his personal boots from the property room. (ECF No. 179-1 ¶¶ 10-11.) After he filed the grievance regarding Ball taking his boots, he asserts that Ball and Parks told him he would not get his other property back, and that he should stop filing grievances. (ECF No. 179-1 ¶ 13.) Then, when Plaintiff had finished serving his time in disciplinary segregation, he claims that he asked Parks for his stereo and other items, and at that point, he claims Parks told him: "I told you, you got all the appliances back [you're] going to get." (ECF No. 179-1 ¶ 14.) The following day, Parks came to his cell with the two-page unauthorized property form telling him that all of his items had been deemed unauthorized because they were broken or altered. (ECF No. 179-1 ¶ 15; ECF No. 179-2 at 38-39 (unauthorized property notice).) He asserts that these grievances apprised LeGrand of the situation, but no investigation was conducted. (ECF No. 179-1 ¶¶ 17, 20; ECF No. 179-3 at 1-13, 35-58.)

Therefore, the court finds Plaintiff has produced sufficient admissible evidence to defeat Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Ball, Parks and LeGrand related to deeming his stereo and other appliances unauthorized.

As for his claim against Baros, Plaintiff contends that when he was moved out of Unit 4A, away from ball and Parks, he filed a grievance regarding his property being deemed unauthorized in retaliation for his filing grievances against them. (ECF No. 179-1 ¶¶ 17, 20; ECF No. 179-3 at 1-13, ECF No. 179-3 at 15-33, ECF No. 179-2 at 41-51, ECF No. 179-3 at 35-58) (grievances).) He contends that because he filed these grievances, Baros came into his cell and deemed Plaintiff's twelve CDs unauthorized. (ECF no. 179-1 ¶ 22; ECF No. 179-4 at 4 (unauthorized property notification from Baros dated July 2, 2012.)

The court finds there is insufficient evidence to support the retaliation claim against Baros. While Defendants may not have adequately "shown" or pointed out to the court the absence of evidence in support of this claim, the court has the power to enter summary judgment

1   "*sua sponte*, so long as the losing party was on notice that [he] had to come forward with all of

2   her evidence." *Celotex*, 477 U.S. at 326 (citations omitted); *see also U.S. v. 14.02 Acres of Land*

3   *More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) ("*Sua sponte* grants of

4   summary judgment are only appropriate if the losing party has 'reasonable notice that the

5   sufficiency of his or her claim will be in issue" (citation and internal quotation marks omitted)).

6   "A party is fairly [apprised] that the court will in fact be deciding a summary judgment ... motion

7   if that party submits matters outside the pleadings to the judge and invites consideration of

8   them." *Id.* (citation omitted). Here, Plaintiff included his own declaration where he concludes

9   that because he had filed prior grievances against Parks and Ball, Baros came to his cell and

10  deemed the twelve CDs unauthorized. (ECF No. 179-1 at ¶ 22.) Therefore, the court concludes

11  he was fairly apprised the sufficiency of this claim was in issue.

12          While a plaintiff may present circumstantial evidence to support the causation element of

13  a retaliation claim, and the timing of events may constitute such evidence, a plaintiff's mere

14  speculation that there is a causal connection is insufficient. *See Nelson v. Pima Comm. College*,

15  83 F.3d 1075, 1081-82 (9th Cir. 1996). Unlike the claim against Ball and Parks, where the

16  conduct was preceded by specific comments made by the defendants threatening him not to file

17  grievances and that he would not get his property back, and where Plaintiff handed his grievance

18  directly to one of the defendants, there is no evidence providing the requisite link between Baros'

19  act of deeming the CD's unauthorized and Plaintiff's filing of the grievances against Ball and

20  Parks. For example, there is no evidence in the record that Baros knew about the filing of the

21  grievances against Ball and Parks, or that he made any comments to Plaintiff that would

22  otherwise suggest a retaliatory motive in deeming the CDs unauthorized. Instead, the

23  unauthorized property notice states that the CDs were deemed unauthorized because Plaintiff did

24  not have a CD player to play them on. (ECF No. 179-4 at 4.) There is no evidence in the record

25  that Baros knew about Plaintiff's allegations that Ball and Parks wrongfully deemed the player

26  unauthorized. With no evidence connecting Baros' conduct with Plaintiff's protected activity, the

27  court recommends that summary judgment be granted in Defendants' favor as to this claim.

28  ///

1

### 3. Work Boots

2

Plaintiff avers that after he filed the grievance concerning Ball and Parks taking his watch

3

and razor, Ball went to the property room and ripped open Plaintiff's property bag and took his

4

personal boots and sent them to laundry even though he knew they were not state boots. He

5

contends that Ball did this in retaliation for Plaintiff filing the grievance.

6

Defendants argue that Plaintiff did not exhaust his administrative remedies with respect

7

to his claim that Ball's taking of his work boots from the Unit 4A property room was retaliatory.

8

In support of their argument, they rely on the declaration of Tara Carpenter, who states: "Upon

9

information and belief, the only informal level grievance that specifically requested relief for the

10

alleged misappropriation/destruction of Plaintiff's work boots was GR 2006-29-42595" and for

11

that grievance, Plaintiff did not proceed past the informal level. (Carpenter Decl., ECF No. 172-4

12

¶ 8.)[2]

13

First, the court would point out that in both their motion and the declaration supporting it,

14

Defendants state that Plaintiff did not exhaust his administrative remedies as to the claim

15

pertaining to his work boots and that this is based "upon information and belief." (*See* ECF No.

16

172 at 16:2; Carpenter Decl., ECF No. 172-4 ¶ 8.) The court surmises that the use of the phrase

17

"upon information and belief" was simply an ill-advised choice of words, as the Defendants go

18

on to provide evidence in support of their claim. In the future, in moving for summary judgment

19

counsel should take note that it is the defendant's burden to establish a fact as undisputed, and a

20

declaration must be based on *personal* knowledge, not information and belief.

21

Nevertheless, Plaintiff acknowledges that he only grieved this issue through the informal

22

level, and the parties appear to agree that this is the only grievance relevant to this issue. (ECF

23

No. 179 at 13.) Plaintiff argues, however, that he did not pursue the grievance further because he

24

feared he would experience further retaliation. (*Id*.) He points out that when he tried to challenge

25

the policy that resulted in his watch and razor being taken, his boots were taken, and when he

26

filed the informal level grievance over his boots being taken, his CDs were taken. (*Id*.)

27

28

_____

[2] Ms. Carpenter is employed as acting Associate Warden for LCC. (ECF No. 172-4 ¶ 4.)

1   Defendants' reply that Plaintiff admits he failed to exhaust his administrative remedies,

2   and fear of further retaliation is not an excuse for failing to exhaust administrative remedies.[3]

3   The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought

4   with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

5   prisoner confined in any jail, prison, or other correctional facility until such administrative

6   remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

7   administrative remedies irrespective of the forms of relief sought and offered through

8   administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

9   The failure to exhaust administrative remedies is "'an affirmative defense the defendant

10   must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014), *cert. denied*, 135

11   S.Ct. 403 (Oct. 20, 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). Unless the

12   failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion

13   for summary judgment. *See id.* (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th

14   Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b)

15   motion").[4] As such: "If undisputed evidence viewed in the light most favorable to the prisoner

16   shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If

17   material facts are disputed, summary judgment should be denied, and the district judge rather

18   than a jury should determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71

19   (citations omitted).

20   The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely

21   or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion."

22   *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the

---

[3] After Defendants filed their reply brief, the Ninth Circuit issued its opinion on June 30, 2015, in *McBride v. Lopez*, 791 F.3d 1115 (9th Cir. 2015), where it held that the fear of retaliation *may* make the grievance process unavailable to an inmate and excuse the failure to exhaust administrative remedies. The court need not reach this issue because of its conclusion that Plaintiff was not required to complete the grievance process in light of the prison's response to his informal level grievance indicating that the grievance had been resolved.

[4] If, on the other hand, the failure to exhaust is clear from the face of the complaint, the defendant may raise the defense in a motion to dismiss under Rule 12(b)(6). *See id.*, 1169. "[S]uch cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint." *Id.* at 1169

1   agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."

2   *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

3      If the court concludes that administrative remedies have not been properly exhausted, the

4   unexhausted claim(s) should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108,

5   1120 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir.

6   2014).

7      NDOC's grievance process is set forth in Administrative Regulation (AR) 740. (*See* ECF

8   No. 172 at 10-11.) Defendants rely on the regulation, but do not provide the regulation as an

9   exhibit to their motion. In any event, they contend it requires an inmate to complete three levels

10  of review: the informal, first and second levels. (*Id.* at 10-11.)

11     Defendants acknowledge that Plaintiff filed an informal level grievance regarding Ball

12  taking his work boots by way of grievance number 20062942595. (*See* informal level grievance

13  at ECF No. 172-6 at 3-11.) Plaintiff acknowledges he did not pursue this grievance past the

14  informal level. A careful review of the response to the informal grievance, however, indicates

15  that NDOC considered the grievance "resolved." (ECF No. 172-6 at 2.) It is not clear which

16  version of AR 740 Defendants rely on since they do not provide the AR as an exhibit, but the

17  current version provides that "[a]n inmate who is dissatisfied with the response to a grievance at

18  any level may appeal the grievance to the next level[.]"[5] On the other hand, the regulation

19  provides that an inmate "must file an appeal [of an informal level grievance] within five days of

20  receipt of the response to proceed to the next grievance level."[6] The regulation goes on to

21  provide that prison officials should determine grievance remedies "with the goal of appropriately

22  resolving legitimate claims at the *lowest level of review possible*[.]"[7]

23               

24     [5] AR 740.03.6, effective September 16, 2014,
    http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-
25  %20091614.pdf, last visited October 27, 2015.

26     [6] AR 740.05.12.A., effective September 16, 2014,
    http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-
27  %20091614.pdf, last visited October 27, 2015.

28     [7] AR 740.08.1, effective September 16, 2014,
    http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-
    %20091614.pdf, last visited October 27, 2015.

1    The Ninth Circuit confirmed in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), that an

2    inmate need not continue with the exhaustion process when no further relief is available. "[A]

3    prisoner need not press on to exhaust further levels of review once he has either received all

4    'available' remedies at an intermediate level of review or been reliably informed by an

5    administrator that no remedies are available." *Id*. at 935.

6    In his informal level grievance, Plaintiff described the alleged conduct of Ball and stated

7    that he sought $54.59 or the price to replace his boots that Officer Ball took in violation of LCC

8    and NODC policies concerning inmate personal property. (ECF No. 172-6 at 5-6.) The response

9    to the informal level grievance states, *inter alia*: "Lt. Olivas actually went to Unit 4 A to

10   personally check on this matter and advised that the boots taken from you when you arrived in

11   Unit 4 A were in your Unit 4 A property bin. You will have any property currently being hel[d]

12   in Unit 4 A returned to you as soon as you complete your sanction or are otherwise approved to

13   return to Medium custody housing. *Grievance Resolved*[.]" (ECF No. 172-6 at 2 (emphasis

14   added).) Plaintiff had asked to be reimbursed to replace the boots, and was advised by prison

15   officials that the boots were in fact in his property bin and he would receive them when he

16   completed his disciplinary segregation sanction. Prison officials unequivocally told him that his

17   grievance was "resolved." As a result, it appears there was further relief available to Plaintiff;

18   therefore, he did not need to continue with the grievance process. Therefore, Defendants' motion

19   for summary judgment as to Plaintiff's retaliation claim against Ball related to his work boots

20   based on the argument that he failed to exhaust his administrative remedies should be denied.

21   Defendants assert an alternative argument that Plaintiff's damages should be limited to

22   the value of his boots when purchased, and that punitive damages should be limited to a one-to-

23   one ratio. (ECF No. 172 at 16-17.) Plaintiff will first have to establish liability for his retaliation

24   claim against Ball, and then the matter of damages can be addressed.

25   **B. COUNT III**

26   Count III in essence has two components: (1) Plaintiff's claim that he did not have

27   sufficient time to utilize his cell toilet during door calls; and (2) that he was precluded from

28   accessing his cell toilet outside of door calls.

1    Defendants contend that from 2010 to 2013, Plaintiff's unit was subject to door calls

2    which lasted five or ten minutes, every half hour. They assert that even with this door call policy,

3    inmates nevertheless had access to their cell toilet at least twice every hour. They maintain that

4    having to wait a maximum of twenty-five minutes to use the toilet is, objectively, not a

5    sufficiently serious deprivation under the Eighth Amendment. (ECF No. 172 at 17, citing ECF

6    No. 161 at 10:3-5.)

7    With respect to Plaintiff's claim that Unit 3A's officers would not allow him to access his

8    cell toilet outside of door calls, Defendants maintain that in January of 2012, LeGrand confirmed

9    with the officers in Plaintiff's unit that they would allow an inmate to access his cell toilet if they

10   were on the prison yard or the tier after door call and needed to use the restroom. (ECF No. 172

11   at 18.) Even if Plaintiff's allegations were believed, they reiterate that Plaintiff would have only

12   had to wait twenty-five minutes between door calls to use his cell toilet. (*Id*.) They point out that

13   Plaintiff is not suing any of the officers from his unit, but only asserts that LeGrand enforced a

14   policy disallowing emergency toilet breaks. (*Id*.) They contend that LeGrand had no such policy,

15   as he inquired of the officers what was occurring and was informed that they would allow an

16   inmate to use his cell toilet between door calls. (*Id*.) As a result, they argue there is no evidence

17   of deliberate indifference against LeGrand. (*Id*.)

18   Alternatively, Defendants assert that Plaintiff's damages for this claim should be limited

19   to nominal damages as Plaintiff has not provided admissible evidence regarding how often he

20   urinated or defecated himself, and any punitive damages should be limited to a one-to-one ratio.

21   (*Id*. at 19.)

22   Plaintiff incorporates by reference his briefing on his motion for summary judgment on

23   this claim (ECF No. 132). He argues that LeGrand knew from Plaintiff's grievances that the

24   officers in his unit would not open his cell door for him to use the cell toilet, leaving him to

25   urinate in his pants waiting for door call, but did nothing to remedy the situation.

26   The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S.

27   Const. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the

28   conditions under which [he] is confined are subject to scrutiny under the Eighth Amendment."

1    *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Although conditions of confinement in prison may

2    be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of

3    life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide

4    prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint*

5    *v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*

6    *v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000);

7    *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

8         "The circumstances, nature, and duration of a deprivation of ... necessities must be

9    considered in determining whether a constitutional violation has occurred." *Johnson*, 217 F.3d at

10   731. "The more basic the need, the shorter the time it can be withheld." *Hoptowit*, 682 F.2d at

11   1259; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1214, *as amended*, 75 F.3d 448 (9th

12   Cir. 1995) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain

13   within the meaning of the Eighth Amendment.").

14        Where a prisoner alleges injuries stemming from unsafe or unhealthy conditions of

15   confinement, prison officials may be held liable only if they acted with "deliberate indifference

16   to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). This

17   standard involves an objective and subjective component. First, the alleged deprivation must be,

18   in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation

19   omitted). Second, the prison official must subjectively "know of and disregard an excessive risk

20   to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the

21   Eighth Amendment for denying humane conditions of confinement only if he knows that inmates

22   face a substantial risk of harm and disregards that risk by failing to take reasonable measures to

23   abate it." *Farmer*, 511 U.S. at 835.

24        Defendants did not argue in their response to Plaintiff's motion for summary judgment on

25   Count III, as they do now, that depriving Plaintiff of access to the toilet for twenty-five minutes

26   at a time was not objectively, sufficiently serious. (*See* ECF NO. 135 at 3-5.)

27

28

While "toilets can be unavailable for some period of time without violating the Eighth Amendment," a substantial deprivation of sanitary conditions will be sufficient to satisfy the objective component of the Eighth Amendment deliberate indifference standard. *Johnson*, 217 F.3d at 732-33. In ruling on Plaintiff's motion for summary judgment, the court found Plaintiff presented sufficient evidence to meet his burden under Rule 56 with respect to the objective prong of his Eighth Amendment claim. (*See* ECF No. 183 at 10.) Again, Defendants did not put forth any evidence to oppose the objective prong of the claim in responding to Plaintiff's motion for summary judgment on Count III. Plaintiff relies on that same evidence in opposing Defendants' summary judgment motion on Count III. The court will now consider the evidence presented by Defendants and will determine if a genuine dispute of material fact exists as to the objective prong of Plaintiff's Eighth Amendment claim.

In his declaration, LeGrand asserts that pursuant to Unit 3 Post Orders, door calls are conducted on the half-hour and doors are open for ten minutes (ECF No. 135-2 at 2 ¶ 4), implying this is sufficient time for inmates to use the toilet; however, this is contradicted by his grievance response which states that the doors are open for five minutes (ECF No. 132-1 at 18). Defendant provided some clarification about the door call policy in a subsequent declaration where the court ordered him to clarify this apparent contradiction. (*See* ECF No. 161.)

Units 3A and 3B at LCC are composed of eighty-four cells, which house two inmates per cell, with the exception of cells 21 and 22 which are medical single cells. (*Id.* ¶ I.A.1.) Each cell has a toilet. (*Id.*) The unit has a control bubble where a corrections officer is posted to monitor the inmates in the unit and operate the cell doors and unit doors (the unit's sally port doors that open from the unit to the prison yard). (*Id.*) In the control room there is a board which indicates, with photographs of each inmate, which inmate is housed in each particular cell. (*Id.*) During the relevant time period, door calls would occur for five or ten minutes, depending on the unit and timeframe. (ECF No. 161 ¶ I.A.3.) Every half-hour, the officer in the control bubble announces to the inmates that door call is imminent, and inmates who wish to exit their cell during door call push the intercom button in their cell, and a light is illuminated in the control bubble. (*Id.* ¶ I.A.2.) The officer then manually presses the button for each light illuminated. (*Id.*) It takes each

cell door five to seven seconds to open after the button is pressed. (*Id.*) Once the door is opened, inmates wishing to exit their cells exit. (*Id.*) If those inmates want their cell door to be closed for the duration of the door call, upon exiting their cell, the inmates presses the intercom button again. (*Id.*) At the end of door call, all cell doors are closed. (*Id.*) Upon exiting, inmates can move about the tier and outside into the prison yard. (*Id.*) From 2010 through 2013, door calls would occur for five or ten minutes. (*Id.* ¶ I.A.3.) At the end of the door call period, the control bubble officer would announce that door call was ending and inmates could choose to remain on the tier or out in the yard until the next door call. (*Id.* ¶ I.A.4.)

When Plaintiff was housed in Unit 3A, from 2009 to 2010, the post order in effect until July 2010 stated that door calls lasted ten minutes. (ECF No. 161 ¶ I.B.3.i.1, 2.) From July 2010 through August 2011, the post orders provide that door calls in Unit 3A were to last ten minutes. (ECF No. 161 ¶ I.B.3.i.1, 3.) From August 2011 through March 2012, according to the post orders for Unit 3A, five minute door calls were to be conducted at five minutes before the hour (*i.e.*, 5:55 a.m. - 6:00 a.m.) and at five minutes before the half hour (*i.e.*, 6:25 a.m. and 6:30 a.m.). (ECF No. 161 ¶ I.B.3.i.1, 4.) From March 2012 through March 2013, post orders directed that five minute door calls would be conducted on the hour and half hour. (ECF No. 161 ¶ I.B.3.i.1, 5.) When Plaintiff was housed in Unit 3B from February 4-10, 2010, the post order effective April 2009 through July 2010, provided that door calls should be conducted on the half hour and should be for a duration of ten minutes. (ECF No. 161 ¶ I.B.3.ii.1.)

LeGrand clarified that on January 30, 2012, when he issued his first level response to Plaintiff's grievance 20062935232, Plaintiff was housed in Unit 3A, and had been since September 21, 2011. (ECF No. 161 ¶ I.C.4-5.) The post order in effect at that time stated that five minute door calls would be conducted at five minutes before the hour and five minutes before the half hour. (ECF No. 161 ¶ I.C.5.) Thus, he clarified that during the timeframe when he responded to Plaintiff's grievance 20062935232, Unit 3A's door calls lasted five minutes and not ten as he stated in his prior declaration. (ECF No. 161 ¶ I.C.6.)

1    He goes on to state that in 2010, door calls were a little more relaxed as inmates could

2    exit their cells during Door Call in a group, where all cell doors were opened at once, but this

3    stopped in 2011. (ECF No. 161 ¶ I.C.9.)

4    LeGrand does not address Plaintiff's contention that the during door call, the doors were

5    only open for five minutes, and as he claimed in his grievance, the officers opened the cell doors

6    one at a time such that an inmate may only have a few seconds to use the restroom once the

7    officers got to him, if at all, if his cellmate had to use the toilet too. (ECF No. 132-1 at 21-24;

8    ECF No. 14 ¶ 4.)  There is conflicting evidence in the record regarding whether there was

9    sufficient time for an inmate to use the toilet during door call. Insofar as Plaintiff's Eighth

10   Amendment claim in Count III is predicated on Plaintiff being deprived of access to his cell

11   toilet as a result of the door call policy, Defendants' motion should be denied.

12   Plaintiff also claims that not only was there often insufficient time to use the toilet during

13   door call, but inmates were precluded from accessing their cell toilet when they were on the yard

14   or on the tier with no other bathroom access. (ECF No. 132-1 at 2 ¶¶ 3-5.) This is disputed by

15   Defendants.  (ECF No. 135-2 at 3 ¶ 9.) Plaintiff does not state specifically how many times this

16   resulted in his urinating or defecating in his pants, but his declaration states that he apprised his

17   caseworker that he had to urinate in his pants, to no avail, and that it occurred thereafter, at

18   which point he filed his grievances. (ECF No. 132-1 at 2  ¶¶ 3-4.) He further states that as a

19   result of the door call policy, he had to lay on the floor in front of his cell several times with his

20   pants soiled waiting for door call time. (*Id*. ¶ 7.) Therefore, there is a genuine dispute of material

21   fact as to this component of the objective prong of Plaintiff's claim.

22   The court must now address the subjective prong of Plaintiff's claim because if they meet

23   their burden under Rule 56 and Plaintiff does not present evidence to create a genuine dispute of

24   material fact, Defendants may nevertheless be entitled to summary judgment. The issue in the

25   subjective prong of the claim is whether LeGrand knew Plaintiff faced a substantial risk of harm

26   and disregarded that risk by failing to take reasonable measures to abate it.

27   Here, there is no dispute that Plaintiff alerted LeGrand by way of his grievances to his

28   claim that the officers in his unit were not allowing him access to his cell toilet in between door

calls when there was no accessible toilet on the yard or the tier. (*See* ECF No. 132-1 at 18-19, 28-29.) Plaintiff submitted two grievances on this issue, grievance 20062934232 and grievance 20062935296. (ECF No. 13201 at 21-24, 31-32.) The remaining issue, therefore, is whether LeGrand undertook reasonable measures to abate this problem after being alerted to it.

In the first grievance, 20062934232, Plaintiff states that inmates in Units 3A and 3B are given a five minute door call where they must wait for the correctional officer to get to their cell before the door is opened, and by the time the officer gets to an inmate's door, he may have only seconds to use the toilet. (ECF No. 132-1 at 21-24.) He went on to state that when an inmate is on the yard or tier, there is no toilet to use and officers refused to let inmates into their cells to use the toilet unless it was door call, leaving an inmate to urinate or defecate in his pants. (*Id.*)

The informal level grievance was assigned to C. Chacon, who provided a response to Plaintiff on January 9, 2012. (ECF No. 132-1 at 20.) Chacon advised Plaintiff that unit staff conduct door call every twenty-five minutes, and the doors are open for five minutes and then are closed. (*Id.*) The response goes on to state: "I have spoken with all Unit 3A staff and each one of them have indicated that if an inmate claims the need to use the toilet they are allowed to come in off the yard or off the tier and go into their cell." (*Id.*)

Plaintiff, unsatisfied with this response, filed a first level grievance on January 18, 2012. (ECF No. 132-1 at 19.) He reiterated that there were no toilets on the yard or on the tier, and asked that staff be ordered to allow inmates to access their cells when they needed to use the toilet. (*Id.*)

Defendant LeGrand responded to the first level grievance on January 30, 2012. (ECF No. 132-1 at 18.) He indicated that he reviewed the caseworker's response to the informal level grievance and stated that Plaintiff was answered appropriately and completely at the informal level. (*Id.*) He repeated the caseworker's statement that door calls were conducted every twenty-five minutes, the doors were open for five minutes and then closed. (*Id.*) He also reiterated that Unit 3A staff indicated that if an inmate claims the need to use the toilet they are allowed to come in off the yard or off the tier and go to their cell. (*Id.*)

1       Plaintiff filed his second, and final level, grievance on February 9, 2012. (ECF No. 132-1

2   at 17.) He stated: "Again officers will not let us in to use the toilet being told wait until door call.

3   Please address this problem. GP inmates have toilets on yard. Ours is fenced off." (*Id*.)

4       The second level grievance was assigned to SL Foster, who provided the following

5   response on February 14, 2012: "I agree with Warden LeGrand. Door calls are a reasonable tool

6   used to manage inmate movement and maintain security. Grievance denied." (ECF No. 132-1 at

7   16.)

8       Plaintiff initiated his second grievance on this issue, 20062935296, on December 27,

9   2011. (ECF No. 132-1 at 31-32.) In the informal level grievance, Plaintiff asserted that AWP

10  Byrne failed to supervise his employees and was aware that officers in Unit 3 were not opening

11  the cell doors to allow inmates to use the toilets when there is no toilet on the yard or tier. (*Id*.)

12  Officers were telling inmates that it was policy that they had to wait until door call. (*Id*.) In the

13  informal response dated January 3, 2012, Plaintiff was advised that door call was not

14  unconstitutional and the grievance was denied. (ECF No. 132-1 at 30.)

15      Plaintiff filed his first level grievance on January 6, 2012, stating that when an inmate

16  needed to access the toilet officers should allow access to the cells. (ECF No. 132-1 at 29.) The

17  first level grievance was assigned to defendant LeGrand, who provided the following response

18  on January 19, 2012: "You were answered correctly. 30 minute door calls are not

19  unconstitutional, nor are they cruel and unusual punishment. Control of inmate movement is a

20  security matter. The unit officers will make an exception if an inmate indicates they have an

21  emergency. Grievance denied." (ECF No. 132-1 at 28.)

22      Plaintiff then filed his second level grievance on March 4, 2012: "Again CO's not

23  opening doors for use of toilet informing us to wait until door call leaving you with no place to

24  use the toilet. As I have urinated in my pants correct this unconstitutional practice, custom."

25  (ECF No. 132-1 at 27.) SL Foster responded to this grievance on May 1, 2012, and upheld the

26  lower level responses. (ECF No. 132-1 at 26.)

27

28

1      LeGrand acknowledges that no post order or operational procedure specifically requires

2  the allowance of access to the toilet once an inmate was locked outside of his cell or unit (*see*

3  ECF No. 172 at 18, ECF No. 161 at 11:24-26); however, LeGrand confirmed with Unit 3A

4  corrections officers that it was their practice to allow inmates access to their cell toilet if those

5  inmates were locked out on the prison yard or the tier post-door call. (ECF No. 172 at 18, ECF

6  No. 161 at 12:5-8.) Plaintiff contends that this was not the case, and that officers continued to

7  refuse to allow him access to his toilet. (ECF No. 132-1 at 3 ¶ 5.)

8      In fact, Plaintiff contends that the officers told him that they were instructed by Warden

9  LeGrand not to allow inmates access to their cells. (*Id.*) The statements of the non-defendant,

10  unidentified officers are inadmissible hearsay as they are offered to prove the truth of the matter

11  asserted. The court cannot consider inadmissible evidence in determining whether a party has

12  raised a dispute as to a material fact in connection with a summary judgment motion. *See* Fed. R.

13  Civ. P. 56(c)(2),(4).

14      While Plaintiff initiated his first grievance (20062934232) on this issue  on December 16,

15  2011, he actually submitted his first level grievance for grievance 20062935296, on January 6,

16  2012, *before* he submitted his first level grievance in 20062934232. (*See* ECF No. 132-1 at 19,

17  29.) Defendant LeGrand responded to both first level grievances. He responded to the first level

18  grievance in 20062935296 on January 19, 2012, before he responded to the first level grievance

19  on 20062934232 (January 30, 2012). When Plaintiff sent the first level grievance in

20  20062935296 on January 6, 2012, he said that when an inmate needs to use the toilet correctional

21  officers should open the door and not make the inmate urinate or defecate in his pants. (ECF No.

22  132-1 at 29.) He asked that this matter be looked into. (*Id.*) After Plaintiff submitted this first

23  level grievance, and one day before LeGrand responded to this first level grievance, on January

24  Plaintiff submitted his first level grievance in 20062934232. (ECF No. 132-1 at 19.) He advised

25  that there was no toilet on the yard or tier and asked that staff be ordered to allow inmates access

26  to their cells when they need to use the toilet. (*Id.*)

27

28

1    The next day, January 19, 2012, LeGrand responded to grievance 20062935296, and

2    stated, *inter alia*, that "unit officers will make an exception if an inmate indicates they have an

3    emergency." (ECF No. 132-1 at 28.)

4    On January 30, 2012, LeGrand responded to the first level grievance in 20062934232.

5    (ECF No. 132-1 at 18.) At that time he advised Plaintiff that "Unit 3A staff indicated that if an

6    inmate claims the need to use the toilet they are allowed to come in off the yard or off the tier

7    and go into their cell." (*Id.*)

8    Plaintiff filed second level grievances stating again that the officers would not allow the

9    inmates access to their cells in between door calls (ECF No. 132-1 at 17, 27), but these were not

10   assigned to LeGrand or responded to by LeGrand. They were assigned and responded to by SL

11   Foster. (ECF No. 132-1 at 16, 26.) There is no evidence that after LeGrand told Plaintiff that the

12   Unit 3A staff had indicated it was their practice to let inmates into their cell if they needed to use

13   the toilet in between door calls that Plaintiff took any other action to alert LeGrand that this was

14   not occurring. Nor is there any other evidence in the record that would establish that LeGrand

15   knew that this was not occurring. There are no subsequent grievances on this issue in the record.

16   Accordingly, the court cannot conclude that LeGrand failed to take reasonable measures to abate

17   the issue after being alerted to it.

18   For these reasons, summary judgment should be granted in LeGrand's favor as to Count

19   III.

20   **C. COUNT IV**

21   The retaliation claim in Count IV against Baros is based on Baros' alleged destruction of

22   Plaintiff's legal exhibits, his crime scene photos, the photos of his wife, and his work boots.

23   The access to courts claim alleges that Baros' taking of his items caused him to miss the

24   deadline to file his claim seeking injunctive relief regarding the twelve CDs that were sold to him

25   as one, but that were counted as two by NDOC.

26   Finally, Plaintiff avers that LeGrand created an unconstitutional policy/custom directing

27   his officers to search inmate property outside of their presence in order to take inmate's legal

28   documents concerning LeGrand and his officers.

1          **1. Retaliation**

2          Defendants first argue that Plaintiff's compensatory damages for this claim are limited to

3   the value of the destroyed property, but that Plaintiff cannot recover for the work boots, stereo or

4   CDs as he already brought a small claims action regarding these items and was awarded a $20

5   judgment and is not entitled to double recovery. (ECF No. 172 at 20.)

6          Second, they contend that Plaintiff has no proof of the missing photographs or legal

7   documents. (*Id.*)

8          Third, they assert that Plaintiff's allegations that his series of grievances prompted

9   LeGrand to have LCC officers retaliate against him "seem" to not be based on admissible

10  evidence. (*Id.*) They contend it is simply not tenable that LeGrand's act of answering Plaintiff's

11  grievances makes him culpable for an officer's allegedly retaliatory conduct. (*Id.*)

12         Fourth, as to Baros, they argue that Plaintiff has not identified how his grievances would

13  have prompted Baros' taking a crime scene photograph and legal documents. (*Id*. at 21.)

14         Finally, they contend that Plaintiff was capable of filing a host of grievances while

15  incarcerated at LCC. (*Id*. at 20.)

16         Alternatively, Defendants assert that Plaintiff's damages should be limited to nominal

17  damages. (*Id*. at 21.)

18         In his opposition, Plaintiff  re-states the contention in his complaint that Baros took his

19  family photos, crime scene photos, boots and legal materials in retaliation for Plaintiff's

20  litigation and grievance filings. (ECF No. 179 at 20.) He reiterates his allegation that taking

21  inmate property and legal materials is a policy of LeGrand. (*Id*. at 21; ECF No. 180 ¶¶ 4, 10, 12.)

22         While Plaintiff may be barred from double recovery for his claim that his property was

23  lost to the extent he was already compensated as such, he is not barred from recovery concerning

24  his claim that Baros *retaliated* against him in confiscating and disposing of this property.

25         Insofar as Defendants contend that Plaintiff has no proof of the missing photos or legal

26  documents, Defendants are mistaken as he has provided a statement in his declaration to that

27  effect. (ECF No. 180 at 6 ¶ 6.) This is sufficient proof that a *missing* item existed.

28

1    As indicated above, an element of a retaliation claim is a causal nexus between the

2    inmate's protected activity and the asserted adverse conduct by the defendant. The inmate "must

3    show that his protected conduct was the 'substantial' or 'motivating' factor behind the

4    defendant's conduct." *Brodheim*, 584 F.3d at 1271 (quoting *Sorrano's Gasco, Inc. v. Morgan*,

5    874 F.2d 1310, 1314 (9th Cir. 1989)) (internal quotation marks omitted).

6    Baros deemed Plaintiff's twelve CDs as unauthorized on July 2, 2012, citing as a reason

7    that Plaintiff did not have a CD player. (ECF No. 180-2 at 39.) Plaintiff initiated his grievance

8    about the CDs on November 8, 2012. (ECF No. 180-2 at 45-57.) The grievance (at any level)

9    does not mention Baros. (ECF No. 40-57.) He does state that the officers who took and broke his

10   stereo did it on purpose (ECF No. 180-2 at 43), but says nothing about retaliation when the CDs

11   were taken. The action of deeming the CDs as unauthorized was upheld under AR 711 which

12   provides that if an inmate does not have a CD player he may not possess CDs. (ECF No. 180-2 at

13   40, 42, and 44.) Baros allegedly disposed of Plaintiff's other property in January 2013. (ECF No.

14   14 at 19.)

15   There is no evidence in the record that Baros knew Plaintiff filed a grievance regarding

16   the CDs, or any other evidence that Baros had a retaliatory motive for disposing of Plaintiff's

17   property in January 2013. Unlike his retaliation claim against Parks and Ball in Count II where

18   Plaintiff alleges that he handed one of the grievances to Ball, and that Parks and Ball threatened

19   to withhold more of his property and threatened him to stop filing grievances. The grievance did

20   not name Baros, there is no evidence he knew Plaintiff filed it, and the conduct of which Plaintiff

21   complains in Count IV took place months after Plaintiff filed the grievance.

22   In his declaration, Plaintiff states that he was working on the following claims when

23   Baros disposed of his legal papers: NDOC selling him unauthorized property (the Music by Mail

24   program), a First Amendment retaliation claim against Vallaster, and a claim asking that his CDs

25   be counted as twelve and not twenty-four by way of an injunction. (ECF No. 180 at 6.) He states

26   that Baros disposed of his work boots that he was planning to use in his small claims action

27   concerning the boots (ECF No. 180 at 7 ¶ 8), but he does not assert that the legal paperwork

28   disposed of by Baros included documents related to the small claims action or that Baros was

1   implicated in the small claims action. Insofar as the court can tell from Plaintiff's extensive

2   declarations and exhibits, the small claims action was being brought against Ball, whom Plaintiff

3   alleges removed his boots from the property room in the first place, and that he simply intended

4   to use the pair of boots he subsequently obtained as an exhibit in this case. This does not provide

5   the necessary link between the protected activity Plaintiff asserts he was engaging in and Baros'

6   conduct.

7       As a result, the court recommends that summary judgment be granted in Baros favor as to

8   the retaliation claim in Count IV.

9       There is no evidence in the record to support Plaintiff's allegation that LeGrand had a

10  policy of having his employees search inmate property outside of their presence so that they

11  could dispose of it. LeGrand and other NDOC employees responded to Plaintiff's grievances

12  concerning his property. On some occasions the grievances were resolved, and on others, reasons

13  were cited for denying the grievances. This is not evidence of a policy of searching property

14  without the inmate present. Plaintiff provides the declaration of another inmate who provides the

15  conclusory statement that LCC has a policy of retaliating against inmates for filing grievances

16  (ECF No. 180-3 at 52), but this inmate provides no details regarding this alleged retaliatory

17  policy, let alone any details regarding LeGrand's purported involvement.

18      Therefore, summary judgment should be granted in LeGrand's favor as to the retaliation

19  claim in Count IV.

20      **2. Access to Courts**

21      Inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S.

22  343, 346 (1996). A prisoner must establish that he or she suffered an actual injury, a

23  jurisdictional requirement that flows from the standing doctrine and may not be waived. *Id*. at

24  348 (citation omitted). "Actual injury" is defined as "actual prejudice with respect to

25  contemplated or existing litigation, such as inability to meet a filing deadline or present a claim."

26  *Id*. (citation and internal quotation marks omitted). The prisoner who seeks a remedy for a lost

27  opportunity to present a legal claim (known as a backward-looking denial of access to courts

28  claim), the prisoner must show the loss of a "nonfrivolous" or "arguable" underlying claim.

1  *Christopher v. Harbury*, 536 U.S. 403, 415, 417 (2002). The right of access to the courts is

2  limited to non-frivolous direct criminal appeals, habeas corpus proceedings and section 1983

3  actions. *Lewis*, 518 U.S. at 353 n. 3, 354-55.

4          Defendants argue that Plaintiff never asserted that he was unable to access the courts in

5  connection with his small claims action. (ECF No. 172 at 21-22.) They also argue again that he

6  cannot seek double recovery for the loss of his stereo and CDs under this claim. (*Id*. at 22.)

7          Defendants argue that Plaintiff's access to courts claim is based on his small claims

8  action in Pershing County Justice Court regarding his stereo and CDs; however, this is not how

9  the court interprets Plaintiff's claim. The amended complaint specifically states that Baros

10  disposed of legal papers and exhibits pertaining to Plaintiff's case against NDOC concerning the

11  Music by Mail program, and that he missed the deadline to file a claim seeking injunctive relief

12  regarding the twelve CDs that were sold to him as one but were counted as twelve individual

13  discs and deemed to be in excess of NDOC's property allotment. (*See* ECF No. 14 at 20 ¶¶ 5-6.)

14  The amended complaint makes no mention of Plaintiff's small claims action concerning his CDs,

15  stereo or boots as having a connection to his access to courts claim.

16          In a footnote, Defendants assert that if Plaintiff was not referring to the small claims

17  action in the amended complaint, then the claim is still subject to a motion for judgment on the

18  pleadings. (ECF No. 172 at 21-22 n. 9.) In screening Plaintiff's amended complaint, the court

19  already determined that Plaintiff stated a plausible claim for violation of his First Amendment

20  right of access to the courts. As the court explained, the allegations giving rise to this claim are

21  sufficiently clear and not conclusory.

22          Defendants have not met their burden under Rule 56 with respect to Plaintiff's access to

23  court's claim, and their motion for summary judgment as to this claim should be denied. Their

24  alternative request for judgment of the pleadings should similarly be denied.

25  ///

26  ///

27  ///

28  ///

# IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order that Defendants' motion be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Defendants' motion should be **DENIED** as to Plaintiff's retaliation claim in Count II against Ball, Parks and LeGrand concerning the stereo and other appliances;

(2) Defendants' motion should be **GRANTED** as to Plaintiff's retaliation claim in Count II against Baros and LeGrand regarding the twelve CDs;

(3) Defendants' motion should be **DENIED** as to Plaintiff's retaliation claim in Count II against Ball concerning his work boots;

(4) Defendants' motion should be **GRANTED** as to Count III;

(5) Defendants' motion should be **GRANTED** as to Plaintiff's retaliation claim against Baros and LeGrand in Count IV; and

(6) Defendants' motion should be **DENIED** as to Plaintiff's access to courts claim in Count IV.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 2, 2015.

_____

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE